[Cite as *State v. O.A.B.*, 2020-Ohio-547.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-384 |
| v. | : | (M.C. No. 2017 CRB 23105) |
| [O.A.B.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 18, 2020

**On brief**: *Zachary M. Klein*, City Attorney, *Bill R. Hedrick*, and *Orly Ahroni*, for appellee. **Argued**: *Orly Ahroni*.

**On brief**: *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued**: *Timothy E. Pierce*.

APPEAL from the Franklin County Municipal Court

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, O.A.B., from a judgment of conviction and sentence entered by the Franklin County Municipal Court following a jury trial in which the jury returned verdicts finding him guilty of domestic violence, assault, and endangering children.

{¶ 2} On November 3, 2017, appellant was charged with one count of domestic violence, in violation of R.C. 2919.25(A), one count of assault, in violation of R.C. 2903.13(A), and one count of endangering children, in violation of R.C. 2919.22(A). Each of the counts included similar "to wit" language stating that appellant committed the conduct at issue by grabbing the victim's throat, throwing the victim to the floor, and

causing marks on both sides of the victim's neck.  Appellant entered a plea of not guilty and requested a jury trial.

{¶ 3}  The matter came for trial before a jury beginning April 16, 2018.  The first witness for the state was Jennifer Burley, a registered nurse employed by Southwestern City Schools.  On November 3, 2017, Burley was on duty at Harmon Elementary School. That morning, R.D., a first-grade student, came into the school clinic.

{¶ 4}  R.D., age five or six, asked Burley for ice to put on her neck.  Burley asked R.D. why she needed ice for her neck, and R.D. stated: "My dad chokeslammed me." (Apr. 16, 2018 Tr. at 120.)  Burley testified that "a choke is a significant injury, and so chokeslam was very descriptive, very specific."  (Apr. 16, 2018 Tr. at 122.)

{¶ 5}  Burley's "immediate view [of R.D.] showed marks on both sides of the neck. They were red."  Burley identified the marks as "petechiae."  (Apr. 16, 2018 Tr. at 122.) Burley defined the term "petechiae" as "bruising," characterized by "red small dots that appear in an area where there's been significant pressure or a rupture of blood vessels." (Apr. 16, 2018 Tr. at 130.)  Burley stated that a petechiae pattern "looks like red polka dots," and that "[t]his is not typical bruising.  Typical bruising, you would see black and blue; but this is all red."  (Apr. 16, 2018 Tr. at 129.)  According to Burley, the cause of the type of bleeding she observed on R.D. was consistent with "blunt trauma."  (Apr. 16, 2018 Tr. at 133.)

{¶ 6}  At the time, Burley provided R.D. with ice "so she could hold that on her neck; and then I left the room and went to get the principal and let him know I had a student that needed to be in his office."  (Apr. 16, 2018 Tr. at 124.)  Burley testified "[t]here was more extensive questioning that needed to be done due to the nature of her complaint."  Burley and R.D. then spoke with the principal in his office.  Burley again asked R.D. how she sustained her injures, and R.D. stated the "[s]ame thing she did when she came in the clinic.  She was very clear."  (Apr. 16, 2018 Tr. at 125.)  R.D. again stated: "My dad chokeslammed me."  (Apr. 16, 2018 Tr. at 126.)

{¶ 7}  At trial, Burley identified photographs of R.D. depicting "wounds that were on the sides of her neck that I saw when * * * she said she had been choked."  (Apr. 16, 2018 Tr. at 124.)  The photographs were taken that day (i.e., November 3, 2017) by a police officer at approximately 2:00 p.m.

{¶ 8} On November 3, 2017, Columbus Police Officer David Younker was dispatched to Harmon Elementary School regarding a report of possible abuse of a child. Upon arriving, Officer Younker spoke to the principal and a nurse. Officer Younker and his partner then took R.D. to a hospital.

{¶ 9} At the hospital, R.D.'s mother arrived, and "[s]he was upset. She was crying, didn't understand why her daughter was there, and she was fearful to see * * * the injuries on her." Officer Younker was in the hallway talking to R.D.'s mother when appellant "showed up." (Apr. 16, 2018 Tr. at 143.) As appellant "walked in, he had his cell phone in his hand and first told us that he was recording himself for his safety and security to make sure we didn't harm him." (Apr. 16, 2018 Tr. at 144.)

{¶ 10} The officers "took his cell phone away from him, handed it to his fiancé[e], [R.D.'s] mother; and * * * we put him in handcuffs and told him he was being detained at that point." (Apr. 16, 2018 Tr. at 144-45.) The officers escorted him to a cruiser. Appellant told the officers he resided with R.D.'s mother, "the fiancé[e]." (Apr. 16, 2018 Tr. at 146.) The conversation was recorded by a camera in the cruiser. At one point, appellant gave the officer a statement "before I read him his rights." (Apr. 16, 2018 Tr. at 147.) At trial, plaintiff-appellee, State of Ohio, played a portion of a recording taken at the time appellant was detained.

{¶ 11} Columbus Police Officer James Null was also dispatched to Harmon Elementary School on November 3, 2017. Officer Null initially spoke with a nurse at the school, and then spoke with R.D. Officer Null took photographs of R.D., and he observed "what appeared to be a petechiae rash around her neck," as well as "on the face, falling into the ears." (Apr. 16, 2018 Tr. at 157.)

{¶ 12} Officer Null stated he had received training "to recognize the signs of strangulation, specifically in domestic violence incidents." The training included a discussion of "the mechanism by which petechiae appear." (Apr. 16, 2018 Tr. at 159.) Officer Null testified that petechiae appears "as small red bubbles or blisters just above the skin surface from capillaries breaking." He stated that "if there's blunt trauma or a lot of force placed around the throat, you will see very tightly clustered petechiae in that area." (Apr. 16, 2018 Tr. at 160.) Officer Null testified he observed petechiae on the neck of R.D.

{¶ 13} T.D., the mother of R.D., resides with appellant and their four children. On November 2, 2017, T.D. was at home with appellant and her children. T.D. testified that the family ate dinner that evening, and then she and her mother left the residence to go to a bridal store; T.D. and appellant were planning to be married in the upcoming year. Appellant is six-foot four inches tall and weighs approximately 200 pounds.

{¶ 14} On her way home from the bridal store, appellant "contacted me that [R.D.] was being unruly; and he was like, you know, I just sent her to her room. When you get home, you deal with it." Appellant told T.D. that "he whooped her and put her on the wall, but she wasn't * * * listening to him, so he sent her to her room." (Apr. 16, 2018 Tr. at 170.)

{¶ 15} When T.D. returned from the store, appellant and one of her sons were "playing on our Playstation, and I talked to them for a minute, and I went and I opened the bedroom door where [R.D.] was cleaning her room, and I happened to notice a scratch on her neck; and I was like, Come here. Like, what is that?" (Apr. 16, 2018 Tr. at 170.) At first, T.D. "thought maybe her ear was bleeding because her ears are pierced. It didn't dawn on me anything because I had asked her what happened. She goes, I don't know Mommy." (Apr. 16, 2018 Tr. at 170-71.) T.D.'s mother was also present at the time, and she also asked R.D. "what happened? I don't know." T.D. asked appellant and her son what had happened and "they're like, Well, we don't know." (Apr. 16, 2018 Tr. at 171.) The next morning, R.D. "said her neck was hurting," so T.D. put "Neosporin" on it and sent her to school. (Apr. 16, 2018 Tr. at 174.)

{¶ 16} On cross-examination, T.D. testified that the first time she was aware R.D. used the term "chokeslammed" was at the hospital speaking with a police officer. (Apr. 16, 2018 Tr. at 174.) When asked if she had reason to disbelieve the statement, T.D. responded: "Yes." T.D. stated that R.D. "wants attention, whether it's good attention or bad, you know, attention. And I'm sorry. If he chokeslammed her, she would be more bruised; and there would have been more showing." (Apr. 16, 2018 Tr. at 177.)

{¶ 17} Following deliberations, the jury returned verdicts finding appellant guilty of all three counts (domestic violence, assault, and child endangering). On May 3, 2018, the trial court conducted a sentencing hearing. The trial court merged the domestic violence and assault counts, and sentenced appellant on Count 1 (domestic violence) to

180 days incarceration.   As to Count 3 (child endangering), the trial court imposed a sentence of two days, suspended for time served.

{¶ 18} On appeal, appellant sets forth the following six assignments of error for this court's review:

> [I.] The trial court committed plain error under Crim.R. 52(B) when it failed to instruct the jury of all essential statutory elements of the offense of child endangering, a violation of R.C. 2919.22(A). This violated the Appellant's Right to Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law provisions of Article I, Sections 1 and 16 of the Ohio Constitution, R.C. 2945.11, and his right to a fair trial under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> [II.] The trial court committed plain error under Crim.R. 52(B) when it failed to define the legal term "preponderance of the evidence" when instructing the jury regarding Appellant's affirmative defense of reasonable parental discipline.  This violated the Appellant's Right to Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law provisions of Article I, Sections 1 and 16 of the Ohio Constitution, R.C. 2945.11, R.C. 2901.05(A), and his right to a fair trial under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> [III.] The lower court committed plain error under Crim.R. 52(B) when it failed to merge the child endangering conviction with the domestic violence conviction inasmuch under the facts and circumstances of this case child endangering and domestic violence constitute allied offenses of similar import under R.C. 2941.25.  The court's failure to merge these two offenses violated Appellant's Right to Due Process of Law under the Fifth and Fourteenth Amendments of the United States Constitution, the Due Course of Law Provisions under Article I, Sections 1 and 16 of the Ohio Constitution, and the double jeopardy protections of the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> [IV.] The Appellant's convictions were not supported by the manifest weight of the evidence.

[V.] The Appellant's right to a fair trial was undermined when the lower court violated his right to confrontation under Article I, Section 10 of the Ohio Constitution by allowing third party witnesses to testify about remarks made to them by nontestifying hearsay declarant Ms. [R.D.] Moreover, the State never demonstrated that Ms. [R.D.] was unavailable to testify at the trial. This rose to plain error under Crim.R. 52(B).

[VI.] Appellant was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶ 19} Under the first assignment of error, appellant asserts the trial court committed plain error in failing to instruct the jury as to all the essential statutory elements of one of the charged offenses. Specifically, appellant argues the trial court failed to instruct as to all the elements of the offense of child endangering.

{¶ 20} R.C. 2919.22(A) sets forth the elements of child endangering, and states in relevant part: "No person, who is the * * * person having custody or control * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Under Ohio law, the mens rea for child endangering pursuant to R.C. 2919.22(A) is "recklessness." *State v. Gaver*, 5th Dist. No. 2015CA00204, 2016-Ohio-7055, ¶ 53.

{¶ 21} In the present case, the trial court provided the jury the following instruction on child endangering:

The defendant is charged with endangering children. Before you can find the defendant guilty, you must find that on or about the 2nd day of November, 2017, Franklin County Ohio, the defendant did recklessly, while being the person having control of a child under 18 years old, create a substantial risk by violating a duty of care.

(Apr. 17, 2018 Tr. at 213.)

{¶ 22} Appellant contends the trial court erred in omitting the language "to the health or safety of the child" from the instruction, asserting it is an essential element of R.C. 2919.22(A). Appellant acknowledges that defense counsel did not raise any objection

to the instruction and, therefore, the claimed error is subject to review under the doctrine of plain error.

{¶ 23} In response, the state notes that Ohio's child endangering statute, R.C. 2919.22(A), permits the prosecution the choice of alleging substantial risk as to either the child's health or safety and that, in the instant case, the state proceeded under the theory that appellant created a substantial risk to the "safety" of the child.[1]   The state argues appellant cannot demonstrate plain error as a result of the trial court omitting the words "to the safety of the child" because the jury also found him guilty of domestic violence and assault based on the same conduct that created a substantial risk to R.D.'s safety; thus, the state maintains, the jury would have found appellant guilty of child endangering even if it had been instructed on the omitted language.

{¶ 24} In order for "an error to be a 'plain error' under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be 'plain,' meaning an 'obvious' defect in the trial proceedings, and (3) the error must have affected 'substantial rights,' meaning the error must have affected the outcome of the trial."  *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 71.  Under Ohio law, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

{¶ 25} In general, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged."  *State v. Adams,* 62 Ohio St.2d 151, 153 (1980).  However, "a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not *per se* constitute plain error nor does it necessarily require reversal of a conviction."  *Id.* at 154.  Rather, "an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions."  *State v. Wamsley,* 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 17.  In considering the charge as a whole, "if it appears from the entire charge that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results."  *State v. Cope,* 12th Dist. No.

---

[1] The complaint alleged in part that appellant created "a substantial risk to the safety of such child."

CA2009-11-285, 2010-Ohio-6430, ¶ 57, citing *State v. Hardy,* 28 Ohio St.2d 89, 92 (1971).

{¶ 26} Ohio courts, including the Supreme Court of Ohio, have addressed plain error challenges in the context of jury instructions for the offense of child endangerment. In *Adams,* the trial court failed to instruct the jury on the essential element of recklessness under the child endangering statute (R.C. 2919.22). Because there was no objection, the Supreme Court reviewed the jury instruction for plain error. In finding no plain error, the Supreme Court noted "the state's proof of the brutal nature of the boy's injuries support[ed] the conclusion that the person inflicting even some of the injuries would necessarily have known that his or her actions would risk causing serious physical harm to a 2 1/2 year old child." *Adams* at 155. Further, inasmuch as the sole defense was that the defendant "was not the person or one of the persons who abused the victim, the existence of recklessness on the part of the abuser was never put in issue at trial." *Id.*

{¶ 27} In *State v. Daugherty,* 12th Dist. No. CA2013-12-014, 2014-Ohio-4760, the defendant argued the trial court erred in its instruction to the jury for child endangering by failing to include the element of recklessness. The defendant failed to object, and the court in *Daugherty* found the failure of the trial court to include recklessness in the jury instruction "would not have amounted to plain error because the instructions were sufficiently clear to permit the jury to understand the relevant law." *Id.* at ¶ 50. The reviewing court further noted the central issue presented to the jury at trial was whether the defendant allowed children to be on the property and within 100 feet of a methamphetamine lab "based on his knowledge of the situation." *Id.* The court found, "[i]n addition to the instructions provided by the trial court, which essentially mirrored the statutory language for the offense, the issues were clearly defined and argued by the parties during closing argument" and, therefore, the outcome of the trial " 'would not clearly have been different but for the alleged error.' " *Id.,* quoting *Cope at* ¶ 62.

{¶ 28} In the present case, similar to *Daugherty,* we find the trial court's failure to include the subject language ("to the health and safety of the child") did not amount to plain error "because the instructions were sufficiently clear to permit the jury to understand the relevant law," and the issues "were clearly defined and argued by the parties during closing argument." *Id.* at ¶ 50. As noted by the state, in addition to the

jury's finding of guilt as to the offense of endangering children, the jury returned verdicts finding appellant guilty of domestic violence (which the trial court instructed the jury "occurs when a person knowingly causes or attempts to cause physical harm to a family or household member") and assault (which the jury was instructed "occurs when a person knowingly causes or attempts to cause physical harm to another"), and such verdicts were based on the same conduct as the child endangering charge. (Apr. 17, 2018 Tr. at 209, 211.) Further, during closing argument, the prosecutor stated to the jury that the state was required to prove appellant acted recklessly, "and then we have to prove that the defendant created a substantial risk to [R.D.'s] safety." (Apr. 17, 2018 Tr. at 192.) Here, reviewing the instructions as a whole and the entire record, we do not find the trial court's omission of the subject language resulted in a manifest miscarriage of justice and, therefore, plain error has not been demonstrated.

{¶ 29} Appellant's first assignment of error is not well-taken and is overruled.

{¶ 30} Under the second assignment of error, appellant asserts the trial court committed plain error by failing to define the term "preponderance of the evidence" when instructing the jury regarding appellant's affirmative defense of reasonable parental discipline. Appellant notes the trial court agreed to defense counsel's request to instruct the jury as to the affirmative defense of properly disciplining his child. Appellant argues, however, the only proof standard the court defined for the jury at trial was "proof beyond a reasonable doubt." Appellant suggests the jury may well have concluded that the latter definition applied to the preponderance of the evidence standard.

{¶ 31} The record indicates the trial court, in providing appellant's requested affirmative defense instruction, charged the jury in part as follows: "If you find by a preponderance of the evidence that the defendant was engaged in proper and reasonable parental discipline at the time, then you should find the defendant not guilty." (Apr. 17, 2018 Tr. at 214.)

{¶ 32} Here, the trial court gave the jury instruction specifically requested by appellant and, as noted by the state, appellant's own proposed instruction did not include a definition of "preponderance of the evidence." Ohio courts have held that "[i]n reviewing a claim on appeal that a jury instruction requested by the defendant and given by the trial court was reversible error, under the 'invited error doctrine,' a party may not

request a jury instruction and then later complain on appeal that [the] requested instruction was given." *State v. Brown*, 5th Dist. No. CT2013-0004, 2013-Ohio-3608, ¶ 53, citing *Walker v. State,* 5th Dist. No. 2007CA00037, 2007-Ohio-5262, ¶ 51. *See also State v. Beaver*, 119 Ohio App.3d 385, 395 (11th Dist.1997) ("Any error in relation to a jury instruction specifically requested by the defense is invited, and, in order to prevent a party from inducing the trial court to commit an error and later take advantage of it on appeal, we deem any error that may have resulted from a requested instruction as being waived."). On review, we agree with the state that, under these circumstances, any error in giving this instruction was invited.

{¶ 33} However, even if the error had not been invited, we would further agree with the state that appellant cannot otherwise show plain error. In *State v. Culley,* 10th Dist. No. 89AP-153 (Aug. 31, 1989), this court addressed a similar claim in which the defendant asserted the trial court committed plain error in "failing to define 'preponderance of the evidence' for the jury's consideration of the affirmative defense of entrapment." While the trial court instructed the jury that entrapment was an affirmative defense, and that defendant had the burden of proving entrapment by the preponderance of the evidence, no further instruction was provided and defendant did not object to the failure of the court to define the term. In *Culley,* this court agreed with the defendant that the trial court "failed to define adequately the nature of that burden of proof so as to distinguish it from that of the prosecution." *Id.* This court concluded, however, that such error did not rise to the level of plain error as it was not clear from the evidence that appellant sufficiently established the affirmative defense of entrapment even to warrant an instruction, and it was "certainly * * * not clear that the outcome of the trial would have been different even if the trial court had properly instructed the jury upon the affirmative defense issue." *Id.*

{¶ 34} In another case cited by the state, *State v. Spinks,* 79 Ohio App.3d 720, 733 (8th Dist.1992), the appellant argued the trial court "prejudicially failed to define 'preponderance of the evidence' as it relates to the issue of self-defense." On review, the court in *Spinks* found no prejudicial error as a result of the trial court's omission of the definition of preponderance of the evidence where the trial court "made clear that if the state failed to prove beyond a reasonable doubt any one essential element of aggravated

murder or murder, or if the defendant proved by a preponderance of the evidence the defense of self-defense, then the defendant is not guilty." *Id.*

{¶ 35} In the present case, the trial court instructed the jury in part as follows:

> The defendant has asserted an affirmative defense that he was engaged in properly disciplining his child at the time alleged. Nothing in the statute prevents a parent from properly disciplining his child. If you find by a preponderance of the evidence that the defendant was engaged in proper and reasonable parental discipline at the time, then you should find the defendant not guilty.
>
> * * *
>
> In conclusion, if you find that the State proved beyond a reasonable doubt all the essential elements of the offense of assault, domestic violence, or endangering children, your verdict must be guilty. If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of assault, domestic violence, or endangering children, then you must find the defendant not guilty.

(Apr. 17, 2018 Tr. at 214-15.)

{¶ 36} Thus, similar to *Spinks,* the trial court in this case "made clear" that if the jury found the state failed to prove beyond a reasonable doubt any one essential element of the charged offenses, or if it found by a preponderance of the evidence that appellant proved the defense of proper and reasonable parental discipline, then it must find appellant not guilty. *Spinks* at 733. Here, as in *Culley* and *Spinks,* appellant cannot demonstrate plain error or prejudice as "the outcome of the trial would not have been clearly otherwise" had the trial court defined preponderance of the evidence. *Culley.*

{¶ 37} Appellant's second assignment of error is overruled.

{¶ 38} Under the third assignment of error, appellant contends the trial court committed plain error by failing to merge the offenses of child endangering and domestic violence as allied offenses of similar import. Appellant maintains the state's proof at trial tracked the indictments, and that the conduct giving rise to domestic violence is identical to that for child endangering (i.e., appellant was accused of injuring R.D. by grabbing her by the throat and throwing her to the floor).

{¶ 39} In response, the state concedes the trial court committed plain error by failing to merge the offenses. Specifically, the state acknowledges the same conduct supported the offenses of child endangering and domestic violence, and that the offenses were committed with the same animus.

{¶ 40} On review, we accept the state's concession. Here, where the record indicates the state "relied upon the same conduct to prove the offenses of domestic violence and child endangering," we find plain error based on the trial court's failure to merge the offenses. *See State v. Blanda,* 12th Dist. No. CA2010-03-050, 2011-Ohio-411, ¶ 23 (where same conduct was used to prove domestic violence and child endangering, defendant's convictions "were allied offenses of similar import and the failure to merge them amounted to plain error").

{¶ 41} Appellant's third assignment of error is sustained.

{¶ 42} We will address appellant's fourth and fifth assignments of error in inverse order. Under the fifth assignment of error, appellant argues his right to a fair trial was undermined when the trial court violated his right to confrontation. Specifically, appellant asserts the prosecution proceeded without calling R.D. to testify, instead relying on her hearsay remarks made to a school nurse (Burley). Appellant argues Ohio has interpreted its constitution to confer greater confrontation rights to their citizens as compared to the federal constitution, and that the predicate of unavailability violated state confrontation law. Appellant acknowledges the record does not indicate defense counsel challenged the statements at issue under the confrontation clause of Article I, Section 10 of the Ohio Constitution, but contends the trial court's admission of the statements violated principles of plain error.

{¶ 43} At issue under this assignment of error is the trial court's admission of statements made by R.D. to the school nurse under Evid.R. 803(4) (providing a hearsay exception for statements made for purposes of medical diagnosis or treatment). By way of background, prior to trial, appellant filed a motion in limine with respect to the testimony of a potential witness for the state (Jennifer Burley). On April 10, 2018, the trial court held a pre-trial hearing on the motion. At the close of testimony, the trial court indicated that questions "asked of the child prior to entering the principal's office, I'm going to allow in. I think they are made for the purposes of medical diagnosis. And some of the ones in

the principal's office are the same, so I'm going to allow those in as well." (Apr. 10, 2018 Tr. at 41.) The court further ruled that other aspects of the testimony would not be permitted.

{¶ 44} The Confrontation Clause of the Sixth Amendment "provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 34. The United States Supreme Court has interpreted this provision "to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." *Id.,* citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

{¶ 45} Following *Crawford,* "the United States Supreme Court held that 'a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial.' " *State v. Felts,* 4th Dist. No. 15CA3491, 2016-Ohio-2755, ¶ 33, quoting *Ohio v. Clark,* ___ U.S. ___, 135 S.Ct. 2173, 2180 (2015). Thus, the Confrontation Clause of the Sixth Amendment "does not bar the admission of nontestimonial out-of-court statements." *State v. Newsome*, 3d Dist. No. 12-12-03, 2012-Ohio-6119, ¶ 27, citing *Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

{¶ 46} As noted, the trial court in the instant case admitted the statements R.D. made to the nurse (Burley), pursuant to Evid.R. 803(4), the hearsay exception for statements made for purposes of medical diagnosis or treatment. Evid.R. 803(4) states in part as follows:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> * * *
>
> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶ 47} Under Ohio law, "[s]tatements made for the purpose of medical diagnosis and treatment are nontestimonial." *State v. Arnold,* 126 Ohio St.3d 290, 2010-Ohio-

2742, ¶ 28. *See also State v. Just,* 9th Dist. No. 12CA0002, 2012-Ohio-4094, ¶ 19, citing *In re T.L.*, 9th Dist. No. 09CA0018-M, 2011-Ohio-4709, ¶ 13-15 (If statements elicited by an interviewer are made "for the primary purpose of medical diagnosis or treatment, they are nontestimonial and admissible under Evid.R. 803(4).").

**{¶ 48}** While appellant argues the prosecution failed to make a showing that R.D. was unavailable to testify, the Supreme Court has held: "Regardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment." *State v. Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, syllabus. In *Muttart,* the Supreme Court made clear that "[s]tatements made to medical personnel for purposes of diagnosis or treatment are not inadmissible under *Crawford,* because they are not even remotely related to the evils that the Confrontation Clause was designed to avoid." *Id.* at ¶ 63. *See also Arnold* at ¶ 44 (statements made to interviewers at a child-advocacy center "made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause").

**{¶ 49}** Appellant does not challenge the trial court's determination that R.D.'s out-of-court statements were made for the purposes of medical diagnosis or treatment. Rather, appellant's contention is that Article I, Section 10 of the Ohio Constitution bestows greater rights of confrontation than under the Sixth Amendment of the United States Constitution. Section 10, Article I of the Ohio Constitution states in part: "In any trial, in any court, the party accused shall be allowed to * * * meet the witnesses face to face."

**{¶ 50}** In support, appellant relies primarily on *State v. Storch,* 66 Ohio St.3d 280 (1993), in which the Supreme Court held, in paragraph one of the syllabus, that "Evid.R. 807 accords with the right of confrontation guaranteed by both Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the Constitution of the United States." The Supreme Court further held in that case: "We believe the live testimony of a child who has claimed abuse will in most cases enhance the reliability of the fact-finding process." *Id.* at 292. Appellant acknowledges that various Ohio courts, including this court, have

limited the holding in *Storch* to cases involving Evid.R. 807, but appellant "respectfully disagrees" with those cases. (Appellant's Brief at 55.)

{¶ 51} Appellant's contention, in the context of the admission of non-testimonial statements under Evid.R. 803(4), that the Ohio Constitution provides more protection than the Sixth Amendment right of confrontation is not persuasive in light of *Arnold* and other Ohio decisions. *See Arnold* at ¶ 12, quoting *State v. Self,* 56 Ohio St.3d 73, 79 (1990) (noting, in case admitting hearsay under Evid.R. 803(4), that " 'Section 10, Article I [of the Ohio Constitution] provides no greater right of confrontation than the Sixth Amendment' "). *See also State v. Williams,* 6th Dist. No. L-11-1084, 2013-Ohio-726, ¶ 21 ("We view the Ohio Supreme Court's decision in *Arnold*, that the Ohio Constitution affords no greater right of confrontation of witnesses than that afforded under the Confrontation Clause of the Sixth Amendment with regard [to] statements made for purposes of medical diagnosis and treatment, as consistent with our analysis in [*State v.*] *Johnson*, [6th Dist. No. L-05-1001, 2006-Ohio-1232] both with respect to statements for purposes of medical diagnosis and treatment as well as statements that constitute excited utterances.").

{¶ 52} As noted by one court, *Storch* "was written more than a decade before *Crawford*," and the Supreme Court's "later case" in *Arnold* "has reiterated the Court's prior position that 'Section 10, Article I [of the Ohio Constitution] provides no greater right of confrontation than the Sixth Amendment.' " *State v. Carter,* 7th Dist. No. 15 MA 0225, 2017-Ohio-7501, ¶ 41-42, quoting *Arnold* at ¶ 12. Further, as acknowledged by appellant, various courts (including this court) have found the holding in *Storch,* involving the admission of statements under Evid.R. 807, inapplicable to cases involving statements properly admitted into evidence under Evid.R. 803(4). *See State v. Edinger,* 10th Dist. No. 05AP-31, 2006-Ohio-1527, ¶ 83 (finding *Storch,* in which "the Supreme Court of Ohio was considering the admission of statements under Evid.R. 807," inapplicable to case where statements of minor "were properly admitted under Evid.R. 803(4)"); *State v. Brown,* 5th Dist. No. CA-9543 (Aug. 22, 1994) (distinguishing *Storch* on the grounds "Evid.R. 803(4) is a firmly rooted hearsay exception," and "admission of evidence pursuant to this rule does not violate the defendant's federal right to confrontation of witnesses").

{¶ 53} Here, the statements at issue were non-testimonial, made for purposes of medical diagnosis and treatment, and appellant has failed to show the trial court committed error, plain or otherwise, in admitting such statements in violation of his right to confrontation under the Ohio Constitution.

{¶ 54} Accordingly, appellant's fifth assignment of error is not well-taken and is overruled.

{¶ 55} Under the fourth assignment of error, appellant asserts his convictions are against the manifest weight of the evidence.  Appellant contends, similar to challenges raised in the previous assignment of error, that the trial court's admission of R.D.'s statements to the nurse violated his confrontation rights, seriously undermining his ability to meaningfully challenge R.D.'s credibility and the ability of the jury to assess her credibility.  Appellant maintains there were clues during the trial that the incident may not have occurred in the manner R.D. described, as Burley suspected R.D. had exaggerated parts of her story.  Appellant also contends he proved the affirmative defense of reasonable parental discipline based on remarks he made to officers while detained in the police cruiser.

{¶ 56} In considering a challenge to the manifest weight of the evidence, an appellate court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  Further, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 57} R.C. 2919.25(A) defines the offense of domestic violence, and states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."  The offense of endangering children, defined under R.C. 2919.22(A), states in part: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care."  R.C.

2903.13(A), which proscribes the offense of assault, states in part as follows: "No person shall knowingly cause or attempt to cause physical harm to another."

{¶ 58} At trial, appellant raised the affirmative defense of reasonable parental discipline. Under Ohio law, " '[t]he propriety and reasonableness of corporal punishment in each case must be judged in light of the totality of the circumstances,' " and " '[a] child's age, behavior, and response to noncorporal punishment as well as the location and severity of the punishment are factors that should be examined.' " *Westlake v. Y.O.,* 8th Dist. No. 107226, 2019-Ohio-2432, ¶ 29, quoting *State v. Hart,* 110 Ohio App.3d 250, 256 (3d Dist.1996), fn. 2. Further, "[t]he accused has the burden of establishing parental discipline as an affirmative defense." *State v. Phillips,* 10th Dist. No. 12AP-57, 2012-Ohio-6023, ¶ 18, citing *State v. Zielinski*, 12th Dist. No. CA2010-12-121, 2011-Ohio-6535, ¶ 27.

{¶ 59} As noted under the facts, at trial the state presented the testimony of Jennifer Burley, a registered nurse, who testified that R.D., age five or six, came into the nurse's station at school and asked for ice for her neck. When Burley inquired why she needed ice, R.D. stated: "My dad chokeslammed me." (Apr. 16, 2018 Tr. at 120.) Burley observed marks on both sides of R.D.'s neck. Burley described the red marks as "petechiae," or "bruising," whereby small red dots "appear in an area where there's been significant pressure or a rupture of blood vessels." (Apr. 16, 2018 Tr. at 130.) According to Burley, such bruising is not typical, and the type of bleeding she observed on R.D. was consistent with "blunt trauma." (Apr. 16, 2018 Tr. at 133.)

{¶ 60} Columbus Police Officer James Null was dispatched to the elementary school and spoke with R.D. The officer took photographs of R.D., and he observed "a petechiae rash around her neck." (Apr. 16, 2018 Tr. at 157.) Officer Null testified that "if there's blunt trauma or a lot of force placed around the throat, you will see very tightly clustered petechiae in that area." (Apr. 16, 2018 Tr. at 160.)

{¶ 61} Columbus Police Officer David Younker was also dispatched to the elementary school, and subsequently took R.D. to a hospital. Appellant arrived at the hospital; as he walked in, appellant was holding his cell phone and informed the officers he was "recording himself for his safety and security to make sure we didn't harm him." (Apr. 16, 2018 Tr. at 144.) The officers escorted appellant to a cruiser, and he gave the officers a statement. At trial, a video recording of the statement made by appellant to the

officers was played for the jury; in the video, appellant informed the officers he had disciplined R.D. by having her stand against a wall, and he later gave her "two butt whoopings" and then told her to clean her room.  (State's Ex. G.)

{¶ 62} R.D.'s mother, T.D., testified that she resides with appellant and their four children.  On the evening of November 2, 2017, T.D. left the residence to go to a bridal store.  On her way home, appellant phoned her and stated that R.D. had been unruly and that "he whooped her and put her on the wall, but she wasn't * * * listening to him, so he sent her to her room."  When T.D. arrived home, she went into R.D.'s room and noticed "a scratch on her neck."  (Apr. 16, 2018 Tr. at 170.)  T.D. asked her daughter what happened, and R.D. responded: "I don't know Mommy."  (Apr. 16, 2018 Tr. at 171)  T.D. then asked appellant what happened, and he said he did not know.  The next morning (November 3, 2017), R.D. stated that her neck hurt; T.D. put Neosporin on the child's neck, and R.D. went to school that day.  T.D. testified that R.D. "wants attention, whether it's good or bad."  T.D. further testified: "If [appellant] chokeslammed her, she would be more bruised; and there would have been more showing."  (Apr. 16, 2018 Tr. at 177.)

{¶ 63} As noted, appellant argues there were clues throughout the trial that the incident may not have occurred in the manner R.D. described it to Burley.  Appellant acknowledges that the state called other witnesses who indicated the petechiae pattern they observed on R.D. was consistent with blunt trauma.  Appellant emphasizes, however, that the only other person (besides himself) who was present at the time of the alleged events never testified.

{¶ 64} Here, the state presented evidence that R.D. informed a school nurse that her father had "chokeslammed" her. The state presented photographs depicting the injuries to R.D.'s neck area and, as acknowledged by appellant, the state presented witnesses who testified that the petechiae pattern on R.D.'s neck was consistent with blunt trauma.  Appellant essentially argues that the jury should have discounted that evidence, and further argues the record more reasonably supports an affirmative defense of reasonable parental discipline based on comments he made to police officers at the time he was taken into custody.

{¶ 65} The jury, however, as trier of fact, was free to choose either the state or appellant's version of how R.D. received the injuries to her neck.  *See State v. Caudill,* 6th

Dist. No. WD-07-009, 2008-Ohio-1557, ¶ 62, quoting *State v. Antill,* 176 Ohio St. 61, 67 (1964) ("The jury * * * is the sole judge of the weight of the evidence and the credibility of witnesses, and 'may believe or disbelieve any witness or accept part of what a witness says and reject the rest.' ").  Further, "[a] conviction is not against the manifest weight of the evidence merely because the jury believed the testimony offered by the prosecution's witnesses."  *State v. Jackson,* 10th Dist. No. 14AP-748, 2015-Ohio-5114, ¶ 23.  To the extent appellant contends the violation of his confrontation rights undermined his ability to challenge the credibility of R.D., we have previously found no error, plain or otherwise, in the trial court's admission of the challenged statements.  Based on the limited weighing of the evidence we are afforded in addressing a manifest weight challenge, we cannot conclude the jury clearly lost its way in finding appellant guilty of the offenses beyond a reasonable doubt.  Accordingly, we find the convictions are supported by the manifest weight of the evidence.

{¶ 66} Appellant's fourth assignment of error is not well-taken and is overruled.

{¶ 67} Under the sixth assignment of error, appellant asserts he was denied effective assistance of counsel.  Specifically, appellant argues his counsel should have challenged the admission of R.D.'s statements under the confrontation clause based on the Supreme Court's decision in *Storch*, and that such failure prejudiced him.

{¶ 68} In order to succeed on a claim of ineffective assistance of counsel, a criminal defendant "must satisfy a two-prong test" as set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *State v. Carter*, 10th Dist. No. 03AP-778, 2005-Ohio-291, ¶ 26.  Under the first prong, a defendant "must show that counsel's performance was deficient," requiring a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Under the second prong of the *Strickland* test, a defendant must show that "counsel's deficient performance prejudiced the defense," requiring a showing that, "but for counsel's unprofessional errors, a reasonable probability existed that the result of the trial would have been different."  *Id.* at ¶ 27.

{¶ 69} As noted, appellant contends his trial counsel was ineffective in failing to challenge the admission of R.D.'s statements under Ohio's confrontation clause per the decision in *Storch*.  However, in light of our disposition of the fifth assignment of error,

finding no confrontation clause violation, appellant can demonstrate neither deficient performance nor prejudice as a result of his counsel's failure to object based on Ohio's confrontation clause.

{¶ 70} Appellant's sixth assignment of error is not well-taken and is overruled.

{¶ 71} Based on the foregoing, appellant's first, second, fourth, fifth, and sixth assignments of error are overruled, and the third assignment of error is sustained. Accordingly, the judgment of the Franklin County Municipal Court is affirmed in part and reversed in part, and this matter is remanded to that court for resentencing to merge the offenses of domestic violence and child endangering.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

SADLER, P.J., and LUPER SCHUSTER, J., concur.

_____