[Cite as *State v. Khalif*, 2024-Ohio-2239.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                               :

      Plaintiff-Appellee,                              :               No. 23AP-274
                                                                                    (C.P.C. No. 21CR-2682)

v.                                                                  :

                                                                                    (REGULAR CALENDAR)

Mahad M. Khalif,                                        :

      Defendant-Appellant.                        :

---

D E C I S I O N

Rendered on June 11, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli*.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Mahad M. Khalif, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of discharge of a firearm on or near prohibited premises with an accompanying three-year firearm specification. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} By indictment filed July 2, 2021, plaintiff-appellee, State of Ohio, charged Khalif with one count of felonious assault, in violation of R.C. 2903.11, a second-degree felony; and one count of discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162, a third-degree felony. Both charges contained accompanying three-year firearm specifications pursuant to R.C. 2941.145(A). The charges related to an incident on February 15, 2021, in which Khalif fired his weapon in the direction of a vehicle. Khalif entered a plea of not guilty.

{¶ 3}   The matter proceeded to a jury trial on May 4, 2022.  Before calling its first witness, the prosecutor indicated police officers would testify to statements Khalif made to them during their investigation.  Defense counsel notified the court the state had failed to make Khalif aware of these statements.  The trial court found Khalif was entitled to knowledge of the principal theories of the state's case and determined the appropriate remedy was to grant a mistrial without prejudice to allow Khalif adequate time to prepare a defense.  Thus, the trial court declared a mistrial without prejudice.

{¶ 4}   Subsequently, on August 30, 2022, Khalif filed a motion to dismiss, arguing a second trial would violate his constitutional protection against double jeopardy.  The state filed a memorandum contra on October 26, 2022, and Khalif filed a response on November 7, 2022.  In a November 14, 2022 entry, the trial court denied Khalif's motion to dismiss, finding double jeopardy did not apply.

{¶ 5}   Prior to the start of the second trial, Khalif filed a notice, pursuant to Crim.R. 12.2, of his intent to argue he acted in self-defense.  The state filed a memorandum of law regarding the application of Ohio's recently enacted Stand Your Ground law, asserting the law did not apply retroactively and that Khalif would be required to argue self-defense under the previous version of the law.  On February 22, 2023, the trial court issued a judgment entry finding the Stand Your Ground law did not apply retroactively to Khalif's case.

{¶ 6}   The second jury trial then commenced on February 21, 2023.  During the trial, Connor Grubb, a patrol officer with the Blendon Township Police Department, testified that on February 15, 2021, he was dispatched to a report of a stolen vehicle.  Upon arriving at the scene, Officer Grubb said Khalif approached Officer Grubb and told him his vehicle had been stolen, the direction it was headed, and that he had shot at the vehicle. Officer Grubb testified Khalif told him he had been inside a store getting food when he saw his vehicle pulling away, so Khalif went outside, saw the vehicle driving south, and tried shooting his gun at the vehicle as it was headed south.  When Officer Grubb asked whether Khalif still had the weapon on his person, Officer Grubb said Khalif answered affirmatively and then provided a Glock 19 handgun to Officer Grubb.

{¶ 7}   Although Officer Grubb did not have a body-worn camera on February 15, 2021, he did have police cruiser video, though he said the cruiser video system performed

poorly. Because he did not have his cruiser lights on when he responded to the scene, Officer Grubb explained that he had to manually start the cruiser video's recording capability, and due to an apparent battery failure in the equipment, the audio of his interaction with Khalif did not record. Officer Grubb then described his interaction with Khalif after he started the cruiser recording system, and he said he asked Khalif to show him where he fired gunshots. Pursuant to Officer Grubb's testimony, Khalif told him that he met the vehicle in the roadway as it was pulling onto Cleveland Avenue and then shot at the vehicle as it was passing him, motioning westbound on Abbington Avenue and southbound on Cleveland Avenue. Later in his testimony, Officer Grubb clarified that Khalif specified that he fired at the vehicle as it went down Cleveland Avenue. Officer Grubb testified Khalif told him he fired his weapon because his vehicle had been stolen and he thought he could. Further, Officer Grubb testified Khalif never indicated that the vehicle was driving directly towards him or that he was afraid for his safety. The state played the cruiser video for the jury.

{¶ 8} After speaking to Khalif, Officer Grubb said he used his cruiser to block the roadway to search the area for shell casings. The officers searching the area located and photographed five shell casings and based on their locations, Officer Grubb determined Khalif would have fired in the direction of west by southwest toward some apartment buildings. Officers recovered four bullets in the magazine of the gun, one in the chamber, and five casings on the roadway. Additionally, the Blendon Township officers alerted Columbus Police and contacted local hospitals for reports of gunshot wounds.

{¶ 9} Officer Grubb testified Khalif had a concealed carry permit and legally purchased the gun. Eventually, police recovered Khalif's stolen vehicle and observed a bullet hole on the left side of the vehicle over the driver's side tire.

{¶ 10} At the time of his interaction with Khalif, Officer Grubb said patrol officers were not required to write a report. Instead, Officer Grubb said the typical practice was for the detective to submit a report through the justice portal. However, Officer Grubb testified that in August 2022, the prosecutor asked him to write a summary of the incident, and he complied.

{¶ 11} Jessica Vickers, a patrol officer with the Blendon Township Police Department, testified she also responded to a report of a stolen vehicle on February 15,

2021. When she met Khalif, Officer Vickers said she provided him with a form for a written statement to complete. After gathering information, Officer Vickers said she filed a stolen vehicle report. She then assisted in looking for shell casings, and she testified Khalif demonstrated shooting west to south as the vehicle drove by him with Khalif standing in the turn lane in the middle of the road when he fired the shots.

{¶ 12} Officer Vickers further testified that in addition to having filed the stolen vehicle report with a brief description and narrative of the incident, she later wrote a summary of the incident at the request of the prosecutor. Officer Vickers did not recall Khalif ever indicating to her that he was in danger.

{¶ 13} Joshua Retherford, a lieutenant with the Blendon Township Police Department, testified he was working as a detective on February 15, 2021. When he became involved in the investigation, Lieutenant Retherford said he first received information related to a stolen vehicle but, after learning Khalif ran into the middle of Cleveland Avenue and fired at the vehicle as it was driving southbound, the investigation became one into discharge of a firearm across a roadway.

{¶ 14} Lieutenant Retherford testified he did not respond to the scene of the incident the day it occurred but that, on February 17, 2021, Khalif came to the police station to discuss the incident. During the interview at the police station, Khalif told Lieutenant Retherford that he saw his car driving away as he was inside a restaurant. Khalif told Lieutenant Retherford he then ran into the middle of Cleveland Avenue and discharged his firearm as the vehicle was driving southbound. Lieutenant Retherford testified he asked Khalif why he thought it was okay to fire his weapon at the vehicle, and Khalif responded that he thought he was allowed to fire at the car because it was being stolen. During that interview, Lieutenant Retherford said Khalif did not provide any information about how close the vehicle got to him and he never indicated he feared for his own safety. Lieutenant Retherford testified that Khalif agreed in that interview that he could have put lives in danger by firing his weapon. Although Lieutenant Retherford said it is typical practice to record such interviews, he testified the interview with Khalif did not record due to wiring issues with the recording system.

{¶ 15} Khalif testified in his own defense. In his testimony, Khalif described February 15, 2021 as snowy and cold. Khalif said he was driving a 2011 Kia Sportage

belonging to his father when he stopped at a store on Cleveland Avenue, parking with his car facing the main door of the store.  When he went into the store, Khalif said he left the car running and, less than a minute later, he exited the store only to find his car was no longer in the parking lot.  Khalif testified he then ran out in the road, saw the car at the stop sign on Abington Road, and then saw the car turn left, heading south on Cleveland Avenue.  Khalif said he had a Glock 19, .9 millimeter, gun with him, noting he had a concealed carry permit for five or six years.  According to his testimony, Khalif pulled his gun out when the vehicle turned towards him, going southbound on Cleveland Avenue.  Khalif testified he was standing in the roadway on Cleveland Avenue, though he was not sure in which lane, and that he pointed his gun at the car and started firing when the car began to turn towards him.  Khalif said he did not believe he had any choice but to fire his weapon because he feared he would slip on the snowy road and be hit either by the driver of his stolen vehicle or by other vehicles on the road.  Khalif said he did not fire any shots after the car passed him.

{¶ 16}  After shooting at the vehicle, Khalif said he called 911 and waited for police to arrive.  He did not tell the 911 dispatcher he had fired his weapon, testifying he did not want to be perceived as a threat when officers arrived.  When asked if he felt he was "in imminent danger of death or great bodily harm," Khalif answered affirmatively, and he further stated he did not believe he had any other means of escape than to fire his weapon.  (Feb. 23, 2023 Tr. Vol. III at 544.)  Khalif testified he could not say how far away the vehicle was from him when he fired his gun, but he said he fired all the shots in quick succession, from the same position, and facing the same direction.  Additionally, Khalif said he got out of the way as soon as he fired his gun and the car drove past him.  Khalif said after he fired his gun, he was in the middle lane facing north and the car was in the southbound lanes driving southbound.

{¶ 17} Following deliberations, the jury could not reach a verdict on Count One, felonious assault, but found Khalif guilty of Count Two, discharge of a firearm on or near prohibited premises and the attached three-year firearm specification.  Following an April 20, 2023 sentencing hearing, the trial court entered a nolle prosequi on Count One of the indictment and sentenced Khalif to nine months on the discharge of a firearm conviction and three years on the firearm specification for an aggregate prison term of three

years and nine months. The trial court journalized Khalif's conviction and sentence in a May 8, 2023 judgment entry, followed by an amended judgment entry filed May 9, 2023. Khalif timely appeals.

## II. Assignments of Error

{¶ 18} Appellant assigns the following six assignments of error for our review:

[I.] The trial court's sua sponte declaration of a mistrial as a sanction for the state's discovery violation deprived defendant-appellant of his rights under the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

[II.] The written verdict of guilty of unlawful discharge of a firearm, unaccompanied by a statement as to the degree of the offense or a finding as to the presence of an aggravating element, does not support defendant-appellant's conviction and sentence for a third degree felony with a firearm specification.

[III.] Defendant-appellant's felony conviction for unlawful discharge of a firearm is against the manifest weight of the evidence.

[IV.] The prosecutor violated defendant-appellant's right to due process and a fundamentally fair jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by engaging in improper witness bolstering and by expressing his baseless opinion that defendant-appellant had no legal right to carry a firearm.

[V.] The absence of a mens rea instruction and inclusion of a duty to retreat instruction in the jury charge deprived defendant-appellant of his right to a fair trial and reliable jury verdict under the Sixth and Fourteenth Amendments to the United States Constitution.

[VI.] Defendant-appellant was denied his right to the effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, due to trial counsel's failure to object to the prosecutor's misconduct and to the omission of a mens rea instruction from the jury charge.

For ease of discussion, we address Khalif's assignments of error out of order.

### III. First Assignment of Error – Double Jeopardy

{¶ 19} In his first assignment of error, Khalif argues the trial court deprived him of his constitutional protection against double jeopardy when it sua sponte declared a mistrial and subsequently denied his motion to dismiss. This court reviews a trial court's decision denying a motion to dismiss on double jeopardy grounds under a de novo standard. *State v. Jama*, 10th Dist. No. 17AP-166, 2017-Ohio-7682, ¶ 10, citing *State v. Jordan*, 10th Dist. No. 14AP-978, 2015-Ohio-4457, ¶ 10, and *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, ¶ 13 ("[a]ppellate courts review de novo the denial of a motion to dismiss an indictment on the grounds of double jeopardy, because it is a pure question of law").

{¶ 20} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment and Article I, Section 10 of the Ohio Constitution, "ensures that a state may not put a defendant in jeopardy twice for the same offense." *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 54, citing *Benton v. Maryland*, 395 U.S. 784 (1969). *See also Mutter* at ¶ 15 ("[t]he protections afforded by the Ohio and United States Constitutions' Double Jeopardy Clauses are coextensive"). The issue of whether a subsequent prosecution after a mistrial can be maintained without violating the principles of double jeopardy depends on: (1) whether jeopardy has attached, and (2) if jeopardy has attached, whether the Constitution bars a retrial or an exception applies. *Jama* at ¶ 11, citing *State v. Mengistu*, 10th Dist. No. 02AP-497, 2003-Ohio-1452, ¶ 24. In a jury trial, jeopardy attaches once a jury is impaneled and sworn. *Id.*, citing *Mengistu* at ¶ 24. Here, the jury had been impaneled and sworn in during the first trial when the trial court declared a mistrial. Thus, although the state had yet to present any evidence, jeopardy had attached in the first trial when the trial court declared the mistrial. Our focus, then, is whether any exception to the Double Jeopardy Clause exists that would permit a retrial of Khalif after the trial court declared the mistrial.

{¶ 21} Under certain conditions, the Double Jeopardy Clause does not prohibit a retrial following a trial court's sua sponte declaration of a mistrial. Specifically, where the trial court declares a mistrial without the defendant's request or consent, the Double Jeopardy Clause does not bar a trial where: (1) " 'there was a manifest necessity or a high degree of necessity for ordering a mistrial,' " or (2) " 'the ends of public justice would otherwise be defeated' " without a retrial. (Internal quotations omitted.) *Jama* at ¶ 15,

quoting *Mengistu* at ¶ 26. "What constitutes a 'manifest necessity' is left to the discretion of the courts, which must 'exercise a sound discretion on the subject; [as] it is impossible to define all the circumstances, which would render it proper to interfere.' " *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, ¶ 26, quoting *United States v. Perez*, 22 U.S. 579, 580 (1824). Thus, in determining whether a mistrial is necessary due to manifest necessity, the trial court must act " 'rationally, responsibly, and deliberately.' " *Jama* at ¶ 15, quoting *Gunnell* at ¶ 33.

{¶ 22} After the jury was impaneled and sworn but before the state began its presentation of evidence, the state indicated that a law enforcement officer would testify about statements Khalif made that were neither recorded nor transcribed. The state represented the law enforcement officer would testify Khalif told him he shot at the vehicle after it had passed and that Khalif was not in any danger when he fired the shots. Khalif argued this information should have been provided to him pursuant to Crim.R. 16, and *Brady v. Maryland*, 373 U.S. 83 (1963). In declaring a mistrial without prejudice, the trial court found "each side is entitled to have some understanding of what the principal theories of the State's case will be against the Defendant." (May 4, 2022 Tr. at 20.) The trial court then found a mistrial was the only remedy that would ensure Khalif had an adequate opportunity to prepare his defense.

{¶ 23} Khalif argues the trial court abused its discretion in concluding there was a manifest necessity for a mistrial where the state failed to disclose the existence of Khalif's statements to police prior to the start of trial. Khalif characterizes the state's failure to disclose this statement as a discovery violation and argues that, under Crim.R. 16(L), the trial court abuses its discretion when it does not impose the least restrictive sanction for a discovery violation. *See State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 30-31 (where either party commits a discovery violation under Crim.R. 16, the trial court is to impose the least restrictive sanction for the discovery violation, and a trial court abuses its discretion where it does not first weigh the feasibility of less severe sanctions); Crim.R. 16(L) ("[i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed,

or it may make such other order as it deems just under the circumstances"). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Darmond* at ¶ 34, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). Khalif asserts on appeal the trial court should have granted a continuance rather than declare a mistrial, and the trial court's failure to impose the least severe sanction rendered his subsequent trial a violation of his double jeopardy protections.

{¶ 24} The state responds that, in denying Khalif's motion to dismiss, the trial court did not find the state committed a discovery violation because the statements to the law enforcement officer were neither written nor recorded. Instead, the trial court determined there had been a miscommunication about the state's theory of the case and that this miscommunication, though unintentional on the part of the state, resulted in Khalif not having adequate notice of the state's main theory of the case. The issue, the trial court found, was not a specific discovery violation under Crim.R. 16 but one of fundamental fairness. We agree with the state that the trial court did not declare the mistrial based on a Crim.R. 16 discovery violation. Given the misunderstanding between the parties about the state's theory, the trial court determined Khalif was entitled to notice of the state's theory of the case. The trial court then found it would be fundamentally unfair for Khalif to proceed to trial without time to prepare a defense to the state's theory of the case. Thus, Khalif's argument that a mistrial was not the least severe sanction for a discovery violation is not relevant to the instant matter.

{¶ 25} Because the trial court determined there was a manifest necessity to order a mistrial based on fundamental fairness for Khalif to have time to adequately prepare a defense, the question before us is whether the trial court abused its discretion in making this determination. Under these particular circumstances, we find the trial court did not abuse its discretion in determining there was a manifest necessity in ordering a mistrial. The trial court expressly found that even though the state did not willfully fail to disclose evidence, the miscommunication created an issue of fundamental fairness. The trial court granted the mistrial to ensure Khalif had an adequate opportunity to prepare a defense specific to the state's theory of the case. The trial court reached this decision after rational, responsible, and deliberate consideration of the implications of ordering a mistrial and any

possible alternatives. *Jama* at ¶ 19, citing *Gunnell* at ¶ 33. Thus, the trial court did not abuse its discretion in determining there was a manifest necessity for ordering a mistrial.

{¶ 26} Because the trial court did not abuse its discretion in determining there was a manifest necessity for ordering a mistrial, Khalif's retrial did not violate his constitutional protections against double jeopardy. *Id.* at ¶ 15, citing *Mengistu* at ¶ 26. Therefore, the Double Jeopardy Clause did not bar Khalif's retrial, and the trial court did not err in denying Khalif's motion to dismiss based on double jeopardy. *Id.* at ¶ 19.

{¶ 27} We overrule Khalif's first assignment of error.

## IV. Second Assignment of Error – Verdict Form

{¶ 28} In his second assignment of error, Khalif argues that because the jury's verdict form for discharge of a firearm on or near prohibited premises did not include either the degree of the offense or the presence of an aggravating element, the trial court could not enter a conviction of the third-degree felony level of the offense. Instead, Khalif asserts that, pursuant to R.C. 2945.75, the verdict form constituted a finding of guilty to the least degree of the offense charged.

{¶ 29} The indictment charged Khalif with one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162, a felony of the third degree. The statute provides "[n]o person shall * * * [d]ischarge a firearm upon or over a public road or highway." R.C. 2923.162(A)(3). The basic form of the offense is a first-degree misdemeanor. R.C. 2923.162(C)(1). But where "the violation created a substantial risk of physical harm to any person or caused serious physical harm to property, a violation of division (A)(3) of this section is a felony of the third degree." R.C. 2923.162(C)(2).

{¶ 30} R.C. 2945.75 governs the degree of the offense charged and the verdict. The statute provides, in pertinent part:

> (A) When the presence of one or more additional elements makes an offense one of more serious degree:
>
> * * *
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

R.C. 2945.75(A)(2). Here, the indictment specified Khalif was being charged, under Count Two, with the third-degree felony offense of discharge of a firearm on or near prohibited premises, specifically stating in the indictment Khalif "created a substantial risk of physical harm to any person or caused serious physical harm to property." (Indictment at 1.) However, the verdict form provided to the jury did not include either the degree of the offense or the language related to an aggravating element. Instead, the jury verdict form stated in its entirety "[w]e, the Jury, being duly impaneled and sworn in this case, find the Defendant, Mahad M. Khalif, Guilty of Discharge Firearm On/Near Prohibited Premise, as charged in Count Two of the Indictment." (Emphasis omitted.) (Verdict.) Khalif argues the trial court erred in convicting and sentencing him on the third-degree felony level of the offense of discharge of a firearm on or near prohibited premises because, pursuant to R.C. 2945.75(A), the guilty verdict could only be construed as a finding of guilty of the first-degree misdemeanor level of the offense. We agree.

{¶ 31} The state concedes the jury verdict form does not comply with R.C. 2945.75(A) in order to make the offense one of a more serious degree. The state notes, however, that Khalif did not object to the verdict form at trial. Although Khalif failed to raise any deficiencies with the verdict form at the trial court level, the Supreme Court of Ohio has strictly construed the requirements of R.C. 2945.75(A), holding "pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, ¶ 14. The Supreme Court further elaborated "the express requirement of the statute cannot be fulfilled by demonstrating additional circumstances, such as that the verdict incorporates the language of the indictment, or by presenting evidence to show the presence of the aggravating element at trial or the incorporation of the indictment into the verdict form, or by showing that the defendant failed to raise the issue of the inadequacy of the verdict form." *Id.* Thus, Khalif argues that even though he did not raise the issue of the inadequacy of the verdict form at trial, the verdict form nonetheless failed to comply with R.C. 2945.75(A) and thus his conviction could only be for the least degree of the offense.

{¶ 32} Several years later, the Supreme Court reiterated its holding in *Pelfrey*. In *State v. McDonald*, 137 Ohio St.3d 517, 2013-Ohio-5042, the Supreme Court stated "the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *McDonald* at ¶ 17, citing *Pelfrey* at ¶ 14. Further, the Supreme Court reiterated that outside materials, such as the indictment, jury instructions, the evidence presented at trial, or the defendant's failure to raise the issue of the adequacy of the verdict form at trial are not relevant; instead, a court looks "only to the verdict form signed by the jury" to determine the level of the offense of which the defendant was convicted. *Id*. at ¶ 18. Thus, a verdict form must contain either the degree of the offense or the elements necessary to distinguish the greater degree of the offense from the lesser degree of the offense. *Id*. at ¶ 24-25.

{¶ 33} The state acknowledges the holdings in *Pelfrey* and *McDonald* that look only to the verdict form, itself, for compliance with R.C. 2945.75(A) and does not mandate plain error review. Additionally, the state agrees that if we follow *Pelfrey* and *McDonald*, the jury verdict form here was inadequate to enter a conviction of the third-degree felony level of the offense of discharge of a firearm on or near prohibited premises. Nonetheless, the state argues that we need not follow *Pelfrey* and *McDonald* because a third decision of the Supreme Court, *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, indicates both that plain error review is permissible and that the court can consider other sources, such as the indictment, itself, and the jury instructions, in determining whether the verdict form complies with R.C. 2945.75(A).

{¶ 34} In *Eafford*, issued after *Pelfrey* but before *McDonald*, the indictment charged the defendant with possession of cocaine, and the trial court instructed the jury it could convict the defendant only if it determined he had possessed cocaine. *Id*. at ¶ 2. The verdict form, however, stated the jury found the defendant guilty "of Possession of Drugs in violation of [R.C. 2925.11(A)], *as charged in Count Two of the Indictment*." (Emphasis sic.) *Id*. at ¶ 6. Because the verdict form did not specify possession of cocaine, a more serious offense, the defendant argued he could only be convicted of the offense of possession of drugs. The least degree of the offense of possession of cocaine is a fifth-degree felony, while the least degree of the offense of possession of drugs is a misdemeanor. The Supreme Court found plain error review was required because the defendant failed to object at trial and

found, under the circumstances of that case, that the defendant knew he was being charged with possession of cocaine, that all of the evidence at trial was about possession of cocaine, and that the defendant could not demonstrate plain error from the verdict form to convict him of possession of cocaine despite the verdict's form reference to possession of drugs. *Id.* at ¶ 19. The state asserts that because *McDonald* did not mention or overrule *Eafford*, and because Khalif failed to object to the verdict form here, plain error review is appropriate.

{¶ 35} We do not agree with the state. In *Eafford*, neither the state nor the appellant argued the verdict form failed to include the degree of the offense or an aggravating element such that the verdict form did not comply with R.C. 2945.75(A)(2). Instead, the state argued that cocaine was not an aggravating element but an essential element of the offense and, thus, *Pelfrey* did not apply. *Eafford* at ¶ 8. Similarly, the appellant argued *Pelfrey* was not applicable because possession of drugs and possession of cocaine are two different offenses, and thus the verdict form reflected a different offense than was charged in the indictment. *Id.* at ¶ 9. Thus, the issue in *Eafford* was not the degree of the offense but the identity of the offense, itself. Here, the issue is not the identity of the offense but the degree of the offense, the same issue before the court in *Pelfrey* and *McDonald*. Accordingly, we do not agree with the state that *Eafford* controls and requires plain error review.

{¶ 36} We also disagree with the state that this court's decision in *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, requires us to disregard *Pelfrey* and *McDonald* and follow *Eafford* to apply plain error review. In *Darazim*, the appellant was convicted of receiving stolen property in violation of R.C. 2913.51. Though *Darazim* references *Eafford*, we note the issue in *Darazim* was not the adequacy of the verdict form under R.C. 2945.75(A); instead, the issue was compliance with R.C. 2913.61(A), the statute setting forth the dollar value of stolen property relative to the degrees of theft offenses. *Darazim* at ¶ 40-42. Because the appellant failed to object at trial, we applied plain error review and found the verdict form's reference to the charges in the indictment constituted "substantial compliance" with R.C. 2913.61(A). *Id.* at ¶ 44. We also note that *Darazim* involved a bench trial, not a jury trial. *See State v. Montgomery*, 10th Dist. No. 13AP-512, 2014-Ohio-4354, ¶ 60 (rejecting appellant's argument that the verdict form in a bench trial could only support conviction of the lowest form of the offense, reasoning "Ohio courts have held that, in a case in which a defendant waives a jury trial and tries his case to the court, a trial court's

journal entry memorializing its judgment of conviction is functionally equivalent to a 'verdict form' as contemplated by *Pelfrey*, and nothing in the Rules of Criminal Procedure requires a court sitting without a jury to complete a verdict form. Rather, the court issues a 'judgment of conviction' which must set forth the plea, the verdict or findings, and the sentence. Thus, a trial court's judgment of conviction stating that it found the defendant guilty of carrying concealed weapons [R.C.] 2923.12—F4 as charged in count(s) 2 of the indictment * * * was in full compliance with R.C. 2945.75 because it was a guilty verdict that stated the degree of the offense for which [the defendant] was found guilty"). (Internal citations and quotations omitted.) Both *Pelfrey* and *McDonald* specifically refer to the verdict forms provided *to the jury*, as was the case here, and we follow the mandates of those cases here.

{¶ 37} Therefore, we agree with Khalif that, following *Pelfrey* and *McDonald*, because the jury verdict form here did not contain either the degree of the offense or the presence of the aggravating element, the jury verdict form could only constitute a finding of guilty of the least degree of the offense charged.[1] Accordingly, the jury verdict form supports only a conviction of discharge of a firearm on or near prohibited premises as a first-degree misdemeanor. As a result, the three-year firearm specification contained in R.C. 2941.145(A) cannot be attached to Khalif's conviction of a misdemeanor offense pursuant to R.C. 2929.14(B)(1)(a). *State v. Canady*, 8th Dist. No. 107157, 2019-Ohio-106, ¶ 11. Thus, the trial court erred in convicting and sentencing Khalif of discharge of a firearm on or near prohibited premises as a third-degree felony and in imposing the accompanying three-year firearm specification. We sustain Khalif's second assignment of error.

## V. Fifth Assignment of Error – Jury Instructions

{¶ 38} In his fifth assignment of error, Khalif argues the trial court erred in instructing the jury. More specifically, Khalif asserts the trial court erred when it failed to instruct the jury on the mens rea required for discharge of a firearm on or near prohibited

---

[1] We note that the Supreme Court has determined a conflict exists on the question "[c]an the requirement in R.C. 2945.75(A)(2) that a 'guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional [aggravating] element or elements are present' be satisfied by a verdict form that cites the statutory sections, permitting the defendant to be convicted of the higher-level offense?" *State v. Mays*, 171 Ohio St.3d 1419, 2023 Ohio LEXIS 1723 (Sept. 6, 2023) (decision without published opinion). As of the publication date of this decision, the Supreme Court has yet to rule on the certified question.

premises, and additionally erred when it instructed the jury on self-defense. Although Khalif objected to the form of the self-defense instruction, Khalif did not object to the instruction on discharge of a firearm on or near prohibited premises. We examine each jury instruction separately.

## A. Discharge of a Firearm on or Near Prohibited Premises Instruction

{¶ 39} Khalif first argues the trial court erred when it instructed the jury on the elements of discharge of a firearm on or near prohibited premises because it failed to include a culpable mental state for the offense.

{¶ 40} Generally, a defendant is entitled to jury instructions on all the elements of the offense the state must prove in order to convict him of the offense charged. *State v. O.A.B.*, 10th Dist. No. 18AP-384, 2020-Ohio-547, ¶ 25, citing *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). Ordinarily, the trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion. *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 127. However, Khalif did not object to the discharge of a firearm jury instruction at trial and, thus, has waived all but plain error. *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 28, citing *State v. Cook*, 65 Ohio St.3d 516, 527 (1992). A court will reverse on plain error based on an erroneous jury instruction only upon a showing that the outcome " 'clearly would have been different absent the error.' " *State v. Petty*, 10th Dist. No. 11AP-716, 2012-Ohio-2989, ¶ 15, quoting *State v. Zachery*, 10th Dist. No. 08AP-451, 2009-Ohio-1180, ¶ 8.

{¶ 41} The offense of discharge of a firearm on or near prohibited premises provides, as relevant here, "[n]o person shall * * * [d]ischarge a firearm upon or over a public road or highway." R.C. 2923.162(A)(3). As Khalif notes, there is not a culpable mental state included in the statutory text. The instruction on discharge of a firearm on or near prohibited premises given in this case was taken from the template provided in the Ohio Jury Instructions and did not include a culpable mental state. In determining whether a jury instruction contains a correct statement of the law, "it is significant when the jury instructions are consistent with the language from the Ohio Jury Instructions." *State v. Spirnak*, 10th Dist. No. 19AP-261, 2020-Ohio-6838, ¶ 40, citing *State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 12 ("[a]lthough we are cognizant that the Ohio Jury

Instructions are not binding legal authority, it is significant that the trial court's instructions here are also consistent with the language from the Ohio Jury Instructions").

{¶ 42} Nonetheless, Khalif asserts the trial court should have instructed the jury that the offense required the culpable mental state of recklessly, pursuant to R.C. 2901.21(C)(1), which provides "[w]hen the language defining an element of an offense that is related to knowledge or intent or to which mens rea fairly could be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly." Khalif argues that because R.C. 2923.162 is silent as to mens rea, R.C. 2901.21(C)(1) should apply to impose a culpable mental state of recklessly for the offense of discharge of a firearm on or near prohibited premises. "R.C. 2901.21 provides a rule 'for determining whether statutes not specifying any culpable mental state impose strict liability or instead require some level of culpability, that is, recklessness.' " *State v. Armstrong*, 10th Dist. No. 16AP-410, 2017-Ohio-8715, ¶ 28, quoting *State v. Tolliver*, 140 Ohio St.3d 420, 2014-Ohio-3744, ¶ 14. Under R.C. 2901.21, where a statute is silent as to the culpable mental state, the statute imposes either strict liability or, at most, a culpable mental state of recklessly. *Id.*, citing *State v. Frey*, 166 Ohio App.3d 819, 2006-Ohio-2452, ¶ 17 (4th Dist.).

{¶ 43} Whether discharge of a firearm on or near prohibited premises under R.C. 2923.162(A)(3) is a strict liability offense or requires the culpable mental state of recklessly is a matter of first impression for this court. We note that other appellate districts considering the question have determined R.C. 2923.162 is a strict liability offense. *State v. Berry*, 5th Dist. No. 2020CA00137, 2024-Ohio-923, ¶ 46; *State v. Wilson*, 8th Dist. No. 111755, 2023-Ohio-1042, ¶ 39; *State v. James*, 8th Dist. No. 102604, 2015-Ohio-4987, ¶ 33; *State v. Krowiak*, 9th Dist. No. 21CA0003-M, 2022-Ohio-413, ¶ 25; *State v. Johnson*, 2d Dist. No. 29475, 2022-Ohio-4629, ¶ 24. However, we need not determine whether the General Assembly plainly indicated a purpose to impose strict liability for a violation of R.C. 2923.162(A)(3) because, under plain error review, even if we were to conclude R.C. 2923.162(A)(3) requires the culpable mental state of recklessly, Khalif cannot show the outcome of the trial clearly could have been different had the trial court so instructed the jury.

{¶ 44} " '[A] trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not *per se* constitute plain error nor does it necessarily require reversal of a conviction.' " *O.A.B.*, 2020-Ohio-547, at ¶ 25, quoting *Adams*, 62 Ohio St.2d at 154. Instead, an appellate court reviews the instructions as a whole, along with the entire record, to determine whether an error in the jury instructions has resulted in a manifest miscarriage of justice. *Id.*, citing *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 17.

{¶ 45} In *Adams*, the trial court failed to instruct the jury on the element of recklessness under the offense of child endangering. The Supreme Court found there was no plain error in the jury instruction both because the evidence necessarily demonstrated recklessness and because, where the sole defense was the defendant was not the perpetrator, "the existence of recklessness on the part of the abuser was never put in issue at trial." *Adams* at 155. Similarly here, Khalif's sole defense at trial was that he acted in self-defense, and there was no dispute he purposely fired his gun over a public road. *See, e.g.*, *State v. Skeens*, 7th Dist. No. 286, 2001 Ohio App. LEXIS 5801, ¶ 24 (Dec. 19, 2001) ("[k]nowingly and purposely conduct encompasses reckless conduct, but a person can act recklessly without acting knowingly or purposely"). Thus, the question of Khalif's intent to discharge the firearm was never put in issue at trial as he admitted to the essential elements of the offense but argued he acted in self-defense. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 21 ("a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability"); *Adams* at 155. *See also State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 28 (finding no plain error in the trial court's jury instruction erroneously defining the culpable mental state of knowingly where the evidence presented at trial was sufficient to prove the definition of knowingly as it existed at the time of the offense). Accordingly, even if, arguendo, recklessness was the requisite mens rea for the offense of discharge of a firearm on or near prohibited premises, Khalif does not demonstrate plain error from the trial court's instruction because he does not show the outcome of the case clearly would have been different had the trial court given a different instruction. *O.A.B.* at ¶ 28; *Kearns* at ¶ 28.

## B. Self-Defense Instruction

{¶ 46} Khalif additionally argues the trial court erred in instructing the jury on self-defense. Specifically, Khalif asserts the jury instructions should have reflected the recent amendments to the self-defense statute eliminating the duty to retreat. Unlike the instruction on discharge of a firearm on or near prohibited premises, Khalif objected to the self-defense instruction at trial, so we do not apply plain error review.

{¶ 47} "The trial court has broad discretion in fashioning the jury instructions as long as it presents 'a correct, pertinent statement of the law that is appropriate to the facts.' " *State v. Stevenson*, 10th Dist. No. 17AP-512, 2018-Ohio-5140, ¶ 16, quoting *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46. Generally, an appellate court reviews a trial court's jury instructions for an abuse of discretion. *State v. Mankin*, 10th Dist. No. 19AP-650, 2020-Ohio-5317, ¶ 33, citing *State v. Gover*, 10th Dist. No. 05AP-1034, 2006-Ohio-4338, ¶ 22, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). However, when a jury instruction contains an incorrect statement of the law, a reviewing court applies a mixed de novo and abuse of discretion standard of review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 21. "Thus, [i]n examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." (Internal quotations and citations omitted.) *State v. Rutledge*, 10th Dist. No. 17AP-590, 2019-Ohio-3460, ¶ 31.

{¶ 48} Khalif argues the trial court erred in instructing the jury on self-defense. At trial, the court instructed the jury as follows:

> To prove that the defendant, when using deadly force, did not act in self-defense, the state must prove beyond a reasonable doubt at least one of the following: (1) the defendant was at fault in creating the situation giving rise to the event in which the deadly force occurred; or (2) the defendant did not have reasonable grounds to believe that he was in imminent danger of death or great bodily harm or (3) the defendant did not have an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm; or (4) the defendant violated a duty to retreat to avoid the danger; or (5) the defendant used unreasonable force.
>
> * * *

> The defendant had a duty to retreat if he had a reasonable and safe means of escape from danger other than by use of deadly force. Such duty to retreat before using deadly force exists even if the defendant is in a place where he has a right to be.

(Feb. 24, 2023 Tr. Vol. III at 691, 693.)  Khalif asserts the trial court's instruction was erroneous because it reflected an outdated version of the self-defense law in Ohio.  The question of the application of a statute is a question of law we review de novo.  *State v. Browning*, 10th Dist. No. 20AP-566, 2022-Ohio-386, ¶ 12.

{¶ 49}  In recent years, self-defense law in Ohio has undergone significant changes. In 2018 Am.Sub.H.B. No. 288 ("H.B. 288"), effective March 28, 2019, the General Assembly amended R.C. 2901.05 to shift the burden from the defendant to the state to prove, beyond a reasonable doubt, that the defendant did not act in self-defense.  *State v. Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478, ¶ 6.  The version of R.C. 2901.05 amended through H.B. 288 "requires the state 'to disprove self-defense by proving beyond a reasonable doubt that [the defendant] (1) was at fault in creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape, OR (3) did violate a duty to retreat or avoid the danger.' "  (Emphasis sic.)  *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 36, quoting *State v. Carney*, 10th Dist. No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶ 50}  More recently, the General Assembly amended R.C. 2901.09, through 2020 Am.S.B. No. 175 ("S.B. 175"), to remove the duty to retreat.  The amended version of R.C. 2901.09(B) provides "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be."  Additionally, the amended version of R.C. 2901.09(C) provides "[a] trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety."  The amendments to the self-defense statute contained in S.B. 175 are known as the "stand-your-ground law."  *State v. Parker*, 1st Dist. No. C-210440, 2022-Ohio-3831, ¶ 10, quoting *State v. Dixon*, 2d Dist. No. 2021-CA-29, 2022-Ohio-3157, ¶ 29.

{¶ 51}  The effective date of S.B. 175 was April 6, 2021.  While the underlying conduct in this case occurred on or about February 15, 2021, Khalif's second jury trial did not begin

until February 21, 2023. Khalif argues the jury instructions on self-defense should have reflected the amendments in the Stand Your Ground law to remove the duty to retreat even though the underlying conduct occurred before the effective date of S.B. 175. Because his trial began after the effective date of the Stand Your Ground law, Khalif asserts the jury instructions on self-defense contained an incorrect statement of the law.

{¶ 52} A court considering whether a statute applies retroactively applies a two-part test "asking (1) whether the General Assembly expressly made the statute retroactive and, if so, (2) whether the statute is substantive or remedial." *State v. Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, ¶ 14, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 8. "A statute is presumed to operate prospectively, unless expressly made retrospective." R.C. 1.48; *Brooks* at ¶ 9. "In order to overcome the presumption that a statute applies prospectively, a statute must 'clearly proclaim' its retroactive application." *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, ¶ 10, quoting *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, paragraph one of the syllabus.

{¶ 53} This court has previously concluded there is no language in R.C. 2901.09 indicating that the General Assembly intended the Stand Your Ground law to apply retroactively. *State v. Huish*, 10th Dist. No. 21AP-255, 2023-Ohio-365, ¶ 63, fn. 8, citing *Parker* at ¶ 14 (noting there is no need to address the question of constitutional retroactivity where a court determines the General Assembly did not expressly make the statute retroactive).[2] Accordingly, because the underlying conduct occurred before the effective date of the Stand Your Ground law, the jury instructions including the duty to retreat did

---

[2] We note the Supreme Court has accepted review on the following proposition of law: "2020 S.B. 175, which amended R.C. 2901.09 to eliminate the duty to retreat for self-defense, applies to all trials held after the effective date of the act, regardless of the date of offense." *State v. Duncan*, 169 Ohio St.3d 1430, 2023-Ohio-381 (*State v. Duncan*, S.Ct. No. 2022-1458, Memo in Support of Jurisdiction at 5). *See also State v. Miree*, 169 Ohio St.3d 1430, 2023-Ohio-381 (appeal accepted on the following proposition of law: "[i]n a criminal case which was tried after the April 6, 2021 effective date of Ohio's 'Stand Your Ground' law and its amendments to R.C. 2901.05/.09, a trial court is required to apply those amendments in instructing the jury on a defendant's self-defense claim, and it must do so even if the underlying alleged crime occurred before that April 6, 2021 effective date"). (*State v. Miree*, S.Ct. No. 2022-1449, Appellant's Brief at 6.) As of the publication date of this decision, the Supreme Court has yet to issue its ruling in *Duncan* or *Miree*. We also note, in *State v. Palmer*, ___ Ohio St.3d ___, 2024-Ohio-539, ¶ 23, the Supreme Court referenced the Stand Your Ground law in a case involving conduct that occurred prior to the effective date of S.B. 175. Despite this reference to the recent amendments, *Palmer* does not directly consider the question of whether R.C. 2901.09(B) applies retroactively.

not contain an incorrect statement of the law. Thus, the trial court did not err in instructing the jury on self-defense.

{¶ 54} Having found the trial court did not plainly err in its instruction on discharge of a firearm on or near prohibited premises and that the trial court correctly stated the law of self-defense in its jury instructions, we overrule Khalif's fifth assignment of error.

## VI. Third Assignment of Error – Manifest Weight of the Evidence

{¶ 55} In his third assignment of error, Khalif argues his conviction of discharge of a firearm on or near prohibited premises is against the manifest weight of the evidence.

{¶ 56} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient, competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the [manifest] weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 57} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 58} The offense of discharge of a firearm on or near prohibited premises provides, as relevant here, "[n]o person shall * * * [d]ischarge a firearm upon or over a public road or highway." R.C. 2923.162(A)(3). Having already concluded, in our resolution of Khalif's second assignment of error, that the jury verdict form constituted a finding of guilty of the least degree of the offense, we consider Khalif's challenge to the manifest weight of the evidence as a challenge to the first-degree misdemeanor level of the offense.

{¶ 59} Khalif argues his conviction is against the manifest weight of the evidence because the jury clearly lost its way in not believing his claim of self-defense. As noted in our resolution of Khalif's fifth assignment of error, the Stand Your Ground law does not apply to Khalif's case as the underlying conduct occurred before the effective date of S.B. 175. Thus, to defeat Khalif's claim of self-defense, the state was required to prove, beyond a reasonable doubt, any of the following: (1) Khalif was at fault in creating the situation giving rise to the affray; (2) Khalif did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape; or (3) Khalif violated a duty to retreat or avoid the danger. *Messenger*, 2021-Ohio-2044, at ¶ 36, citing *Carney*, 2020-Ohio-2691, at ¶ 31, and *State v. Daley*, 10th Dist. No. 19AP-561, 2020-Ohio-4390, ¶ 39.

{¶ 60} Khalif asserts that his testimony demonstrates he acted in self-defense and the state did not convincingly prove otherwise. However, a conviction is not against the manifest weight of the evidence merely because the trier of fact believes the state's version of events over the defendant's version of events. *Messenger* at ¶ 49, citing *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43 (rejecting defendant's argument that his conviction was against the manifest weight of the evidence because the jury did not believe his claim of self-defense), citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. As noted above, the trier of fact remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.

{¶ 61} The state is required to disprove only one of the elements of self-defense beyond a reasonable doubt in order to sufficiently disprove a defendant's claim of self-defense. Here, although Khalif testified at trial he feared for his safety when he stood in the roadway and fired his weapon, the three law enforcement officers all testified Khalif never mentioned fearing for his safety during their investigation and instead indicated he fired

his weapon because he believed he was allowed to since the vehicle had been stolen. The jury was free to consider Khalif's failure to tell any of the three law enforcement officers that he was afraid or feared for his safety at the time of the incident in deciding whether to believe Khalif's version of events presented during his testimony.

{¶ 62} In light of this evidence, as well as the record in its entirety, we do not find the jury clearly lost its way in concluding the state proved that Khalif did not act in self-defense when he fired his weapon in the direction of the vehicle. We conclude, therefore, that the manifest weight of the evidence supports Khalif's conviction of discharge of a firearm on or near prohibited premises. Accordingly, we overrule Khalif's third assignment of error.

## VII. Fourth Assignment of Error – Prosecutorial Misconduct

{¶ 63} In his fourth assignment of error, Khalif argues the prosecutor engaged in misconduct, and thereby deprived him of a fair trial, by engaging in improper witness bolstering and improperly expressing an opinion. Through this assignment of error, Khalif asserts the prosecutor made statements during closing arguments that were so prejudicial as to deny him a fair trial.

{¶ 64} Courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing arguments. *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 18. The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981). " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Thus, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

{¶ 65} Here, Khalif concedes he did not object to the prosecutor's statements at trial and thus has waived all but plain error. "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice."

*State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68.  For an error to be "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule; (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial.  *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).  Specific to allegations of prosecutorial misconduct, "[u]nder a plain error standard, a reviewing court asks whether a defendant ' "would not have been convicted in the absence of the improper conduct." ' " *Lipkins*, 2017-Ohio-4085, at ¶ 23, quoting *State v. Elson*, 10th Dist. No. 13AP-554, 2014-Ohio-2498, ¶ 43, quoting *Saleh* at ¶ 68.

{¶ 66} Khalif points to two allegedly improper remarks the prosecutor made during closing arguments.  The first instance related to the state's response to Khalif's criticism that police officers did not generate a written report at the time of the incident but then created one more than 18 months later.  On rebuttal in closing arguments, the prosecutor then stated:

> This is about, you know, blaming the police for this case and then, by extension, me because we're somehow not treating Mr. Khalif fairly. And I don't think the evidence shows that the police treated him unfairly. And I don't think I have been unfair to him during the course of the trial. I'll let you guys decide that. That's what you're here for. My job is to seek justice. And I just want to focus on what this case is about.

(Feb. 24, 2023 Tr. Vol. III at 667.)  Khalif argues this statement amounted to the prosecutor improperly bolstering the credibility of the state's witnesses.  Additionally, Khalif argues this statement was improper because it improperly placed the integrity of the prosecutor before the jury.

{¶ 67} As a general rule "[i]t is improper for an attorney to express his or her own personal belief or opinion as to the credibility of a witness."  *State v. Williams*, 79 Ohio St.3d 1, 12 (1997).  A prosecutor may, however, comment on testimony and suggest what conclusions the jury should draw from it and, "[i]n doing so, the prosecutor may express his or her personal opinion if he bases that opinion on the evidence presented in court." *State v. Young*, 10th Dist. No. 18AP-630, 2020-Ohio-462, ¶ 46, citing *State v. Crossty*, 12th Dist. No. CA2008-03-070, 2009-Ohio-2800, ¶ 45, and *State v. Shine-Johnson*, 10th Dist.

No. 17AP-194, 2018-Ohio-3347, ¶ 88. A prosecutor improperly vouches for the credibility of a witness " 'when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue.' " *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 200, quoting *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 232. Further, where a prosecutor comments on his or her personal integrity during closing arguments, such statements "must be viewed within the context of the entire trial to determine if any prejudice has occurred." *State v. Mielke*, 10th Dist. No. 10AP-48, 2011-Ohio-277, ¶ 20.

{¶ 68} Here, the credibility of the officers was the main crux of Khalif's argument, with Khalif's defense counsel suggesting in closing arguments that the officers were not to be believed because they did not make written statements at the time of the incident and instead had plenty of time to ensure their written statements, made at the request of the prosecutor, all reflected the same general version of events. Given this context, the prosecutor's statements about whether the officers treated Khalif unfairly is not improper bolstering but a direct response to Khalif's theory of the case.

{¶ 69} Additionally, the prosecutor's statement about whether he had treated Khalif fairly, in context, was not a suggestion of the prosecutor's own beliefs of Khalif's guilt. Instead, the statement was a response to Khalif's counsel's closing argument, and the prosecutor specifically expressed to the jury that it was for the jury to decide the credibility of the witnesses and whether Khalif had been treated fairly. "[A] prosecutor may respond to the specifics of defense counsel's closing arguments." *State v. Canada*, 10th Dist. No. 14AP-523, 2015-Ohio-2167, ¶ 84, citing *State v. Loughman*, 10th Dist. No. 10AP-636, 2011-Ohio-1893, ¶ 40. Thus, we do not agree with Khalif that this statement amounted to the prosecutor improperly expressing a personal opinion on the credibility of the witnesses, improperly placing his own credibility before the jury, or that any prejudice occurred as a result of this statement. *Young* at ¶ 48 ("reversible error does not automatically result where the trial was nonetheless fair or where plain error is not demonstrated by the appellant"). We also note the trial court instructed the jury that the prosecutor's closing arguments are not evidence, and it is presumed the jury follows the trial court's instructions. *State v. Nichols*, 10th Dist. No. 19AP-113, 2020-Ohio-4362, ¶ 28 (where the trial court instructs the jury that closing arguments are not evidence, a reviewing court

presumes the jury followed that instruction and that the verdict is not based on the content of the closing arguments).

{¶ 70} The second allegedly improper statement to which Khalif points occurred when the prosecutor commented on Khalif's proficiency with firearms. On rebuttal in closing arguments, the prosecutor stated:

> Now, if you put him -- [defense counsel] talked about putting yourself in, from his characteristics, his knowledge or lack of knowledge. His knowledge or lack of knowledge. Members of the jury, after listening to him testify about what he knows about firearms, I submit to you he knows nothing about firearms. He knows nothing about how to use them, and he should not be using a firearm. He doesn't know how to aim. He doesn't know how to load it. He doesn't remember if it's loaded. And I just -- he has no business of carrying a firearm.

(Feb. 24, 2023 Tr. Vol. III at 671.) Khalif argues this statement amounted to the prosecutor improperly expressing an opinion about Khalif's legal right to carry and use a firearm.

{¶ 71} We do not agree with Khalif's characterization of the prosecutor's statement. During closing arguments, the prosecutor may comment on a witness's credibility based on the witness's in-court testimony. *Canada* at ¶ 79. Khalif asserted he acted in self-defense, which would require the state to disprove Khalif's position that he reasonably feared for his safety when he fired his gun. Khalif's counsel, in closing argument, asked the jurors to put themselves in Khalif's position when determining whether he acted in self-defense. During the trial, Khalif testified about how long he had his concealed carry permit and what sort of training he did to maintain his firearm skills. The prosecutor's statement about Khalif's proficiency with firearms was not a personal opinion about Khalif's guilt but was, in context, a comment on Khalif's credibility, which was directly relevant to Khalif's claim that he acted in self-defense. Additionally, even if we were to find this statement improper, Khalif does not articulate any specific prejudice flowing from the prosecutor's statement about whether Khalif should carry a weapon. *State v. Abdullahi*, 10th Dist. No. 21AP-350, 2024-Ohio-418, ¶ 36.

{¶ 72} Because Khalif is not able to demonstrate plain error arising from the prosecutor's alleged misconduct, we overrule Khalif's fourth assignment of error.

## VIII. Sixth Assignment of Error – Ineffective Assistance of Counsel

{¶ 73} In his sixth and final assignment of error, Khalif argues he received the ineffective assistance of counsel.

{¶ 74} In order to prevail on a claim of ineffective assistance of counsel, Khalif must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Khalif to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Khalif can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Khalif must establish there is a reasonable probability that, but for his counsel's errors, the results of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 75} In considering claims of ineffective assistance of counsel, courts review these claims with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Khalif contends his trial counsel was ineffective in: (1) failing to object to his allegations of prosecutorial misconduct during closing arguments; and (2) failing to object to the trial court's instruction on discharge of a firearm on or near prohibited premises. We address each of these alleged instances of ineffective assistance of counsel in turn.

## A. Failure to Object to Prosecutorial Misconduct

{¶ 76} Khalif's first alleged instance of ineffective assistance of counsel is his trial counsel's failure to object to the prosecutor's allegedly improper statements during closing arguments. To succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. *State v. Jones*, 10th Dist. No. 18AP-33, 2019-Ohio-2134, ¶ 52, citing *State v. Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 25. We are mindful that "[s]trategic and tactical decisions of trial counsel cannot form the basis of a claim of ineffective assistance of counsel." *State v. Thompson*, 10th Dist. No. 18AP-211, 2019-Ohio-2525, ¶ 21, citing *State v. Glen-Coulverson*, 10th Dist. No. 16AP-265, 2017-Ohio-2671, ¶ 56. A decision not to object during closing arguments can be a reasonable trial strategy. *State*

*v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 154 ("a reasonable attorney may decide not to interrupt his opponent's closing argument" because "[o]bjections can disrupt the flow of a trial and are considered technical and bothersome by the factfinder") (internal quotations omitted), citing *State v. Keene*, 81 Ohio St.3d 646, 668 (1998), and *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994). Additionally, " ' "where the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel." ' " *Young* at ¶ 103, quoting *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22 (plain error review employs "the same deferential standard for reviewing ineffective assistance of counsel claims").

{¶ 77} Khalif makes the same argument here that he made under his fourth assignment of error, which we reviewed under a plain error standard due to the lack of objection at trial to the alleged instances of prosecutorial misconduct. We determined in our resolution of Khalif's fourth assignment of error that Khalif failed to demonstrate any prejudice from the prosecutor's statements and, thus, could not demonstrate plain error. In the context of his ineffective assistance of counsel argument, Khalif again does not articulate any specific prejudice from the prosecutor's remarks other than his general insistence that the remarks deprived him of a fair trial. He does not demonstrate, however, the remarks had any impact on the outcome of the trial. Having previously determined Khalif did not demonstrate prejudice under the plain error standard regarding prosecutorial misconduct, we similarly find Khalif fails to demonstrate, under the second prong of the *Strickland* test, a reasonable probability that, but for his counsel's failure to object, the result of the trial would have been different. *Young* at ¶ 104. Therefore, Khalif's argument on counsel's failure to object to allegations of prosecutorial misconduct does not substantiate a claim for ineffective assistance of counsel.

## B. Failure to Object to Jury Instructions

{¶ 78} Khalif's second allegation of ineffective assistance of counsel is his trial counsel's failure to object to the jury instruction on discharge of a firearm on or near prohibited premises. Khalif imports the same argument here that he made under his fifth assignment of error, which we reviewed under a plain error standard due to Khalif's failure to object to the jury instructions at trial. We determined in our resolution of Khalif's fifth

assignment of error that Khalif could not show the requisite prejudice under the plain error standard from the trial court's failure to instruct on the mens rea of recklessness as it relates to the offense of discharge of a firearm on or near prohibited premises. As we noted in our resolution of Khalif's fifth assignment of error, even if we were to assume recklessly was the requisite culpable mental state for the offense of discharge of a firearm on or near prohibited premises, because Khalif argued he acted in self-defense, the question of whether Khalif discharged his firearm with the requisite intent was never put in issue at the trial. *See Kurtz*, 2018-Ohio-3942, at ¶ 21 ("a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability"). Thus, having previously determined Khalif did not show any prejudice under the plain error standard from the jury instruction, we conclude Khalif does not demonstrate, under the second prong of the *Strickland* test, a reasonable probability that the outcome of his trial would have been different had his trial counsel objected to the omission of an instruction on the culpable mental state of recklessly. *Young* at ¶ 104. Therefore, Khalif's allegation of ineffective assistance of counsel from his counsel's failure to object to the jury instructions does not substantiate a claim of ineffective assistance of counsel.

{¶ 79} Having determined Khalif cannot show the requisite prejudice, under the second prong of the *Strickland* test, from either of his allegations of ineffective assistance of counsel, we overrule Khalif's sixth and final assignment of error.

## IX. Disposition

{¶ 80} Based on the foregoing reasons, the trial court did not err in denying Khalif's motion to dismiss based on double jeopardy, did not plainly err in instructing the jury on the offense of discharge of a firearm on or near prohibited premises, and did not provide an incorrect statement of the law in instructing the jury on self-defense. Additionally, Khalif's conviction of discharge of a firearm on or near prohibited premises is not against the manifest weight of the evidence, Khalif did not demonstrate plain error from prosecutorial misconduct, and Khalif did not receive the ineffective assistance of counsel. However, because the verdict form did not contain the degree of the offense or any aggravating elements, the jury verdict form supports only a conviction of discharge of a

firearm on or near prohibited premises as a first-degree misdemeanor, and the three-year firearm specification under R.C. 2941.145(A) cannot be attached to a misdemeanor offense.

{¶ 81} Thus, having overruled Khalif's first, third, fourth, fifth, and sixth assignments of error but having sustained Khalif's second assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, we vacate the third-degree felony conviction of discharge of a firearm on or near prohibited premises and the attached firearm specification, and we remand the matter to that court with instructions to enter a conviction of discharge of a firearm on or near prohibited premises as a first-degree misdemeanor and for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

DORRIAN and BOGGS, JJ., concur.