[Cite as *State v. Roy*, 2014-Ohio-4587.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-223 |
| v. | : | (C.P.C. No. 10CR-2006) |
| Francis O. Roy, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 16, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Valerie Swanson,* for appellee.

*Wolfe Van Wey & Associates, LLC,* and *Stephen T. Wolfe,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Francis O. Roy is appealing from his conviction on a single charge of Non-Support of Dependents in violation of R.C. 2919.21. For the following reasons, we affirm the conviction.

{¶ 2} Roy assigns four errors for our consideration:

[I.] THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

[II.] THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.

[III.] THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

> [IV.] THE APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

{¶ 3} Roy has an extended history of not paying to support his child. Prior to this case, Roy had been convicted of non-support at least twice. Roy is clearly above average in intelligence. He completed medical school and was a licensed physician for years. Roy is also experienced, having served in the military in a number of positions including as a military physician.

{¶ 4} Roy does not contest the fact that he significantly underpaid his child support during the period of time alleged in the indictment. Instead, he pursued an affirmative defense to the charge claiming that he could not make the payments due to problems maintaining employment, but that he did provide the support that was within his ability and means.

{¶ 5} We initially address the first three assignments of error.

{¶ 6} When reviewing the sufficiency of the evidence to support a conviction, an appellant court must examine the evidence that, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *See State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 7} A review for sufficiency of the evidence does not apply to affirmative defense because this review does not consider the strength of defense evidence–only the sufficiency of the state's evidence. *State v. Gripper*, 10th Dist. No. 12AP-396, 2013-Ohio-2740, ¶ 24, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. Viewing the evidence most favorably for the State, we find that any rational trier of fact could have found the essential elements of non-support of dependents were proven beyond a reasonable doubt.

{¶ 8} The first assignment of error is overruled.

{¶ 9} "Our review of a decision denying a Crim.R. 29 motion for acquittal is the same as a sufficiency review, because a Crim.R. 29 motion tests the sufficiency of the state's evidence." *Gripper* at fn. 1, citing *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 8; *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12.

{¶ 10} For the reasons set forth with respect to the first assignment of error, the second assignment of error is therefore overruled.

{¶ 11} Roy also argues that the verdict is against the manifest weight of the evidence. A manifest weight argument, in contrast to a claim of insufficient evidence, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent and credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In so doing, the court of appeals sits as a " 'thirteenth juror' " and, after " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *Martin* at 175.

{¶ 12} Issues of witness credibility and the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. *Thompkins* at 387.

{¶ 13} A jury may "take note of the inconsistencies and resolve or discount them accordingly, [but] such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." (Citations omitted.) *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). Furthermore, it is within the province of the jury to assess the credibility of witnesses. "It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness." (Citations omitted.) *State v. Dillon*, 10th Dist. No. 04AP-1211, 2005-Ohio-4124, ¶ 15.

{¶ 14} Roy argues that there was ample evidence presented to prove his affirmative defense that he did not have the ability to pay. This evidence is completely reliant on Roy's own testimony and credibility. Simply because Roy presented evidence does not require the State to counter it. The burden of proof was on Roy to convince the jury that the amount of support within his ability to pay was only the minimal amount he paid. Out of 14 months, during 4 months he sent nothing and during 7 months he sent either $10 or $25 per month.

{¶ 15} We do not find that the jury clearly lost their way in concluding that Roy did not prove by a preponderance of evidence that he provided the support that was within his ability and means. Even if the jury did not give one iota of credibility to the unauthenticated document that was read into the record and discussed below, the jury could still have found Roy's testimony not to be credible. Roy admitted lying on his job applications. He acknowledged he was receiving money each month from a veteran's disability and still during four months he sent nothing. The jury did not clearly loose its way such that a manifest miscarriage of justice occurred.

{¶ 16} The third assignment of error is overruled.

{¶ 17} The fourth assignment of error argues that Roy was prejudiced by the ineffective assistance of trial counsel for not objecting to the use of an unauthenticated letter from a former employer.

{¶ 18} A counsel's performance "will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard or reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* It is not enough to show that the errors had some conceivable or possible effect on the outcome of the proceeding.

{¶ 19} The question is whether counsel acted outside the "wide range of professionally competent assistance." *Id.* at 689. Appellate courts must be highly deferential in scrutinizing counsel's performance. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight. * * * There are countless ways to provide effective assistance in any given case." *Id.*

> The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.

*Massaro v. United States*, 538 U.S. 500, 505 (2003).

{¶ 20} Roy argues on appeal that trial counsel's failure to object to the document purporting to show that Roy abandoned his job at a country club falls below an objective standard of reasonable representation. "[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel." *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51.

> Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 21} Roy testified that he was fired from a country club when they learned that he had a medical degree. On cross-examination, the State's counsel asked if the real reason for his termination was job abandonment; Roy's counsel did not object:

> Q. You actually were terminated from that job in February of '08 for job abandonment; isn't that correct?
>
> A. No, that is not correct, ma'am
>
> Q. I have the records. Would you like to see them?
>
> A. Yes, ma'am.
>
> Q. It indicates job abandonment, walked out and never returned except to pick up check. The top portion is a subpoena. That is our office requesting the record. The beginning of the record is right here.
>
> Take a moment and read that, please. Does it indicate that portion on the record is marked the reason for termination, what is marked, sir? Please read that into the record.
>
> A. Reason for termination, job abandonment.
>
> Q. And then it is not marked other, but it does appear that they have some additional writing there. Could you please read that in to the record, sir.
>
> A. Yes, ma'am. Walked out and never returned except to pick up check.

(Tr. 92.) This document was not authenticated and would arguably constitute hearsay, except for the fact it was offered to test Roy's veracity, not prove the matter asserted. As noted above, Roy's trial counsel did not object to this cross-examination, but on redirect examination made the point that Roy did not fill out that paperwork and that his recollection of events differed from the information in the letter.

{¶ 22} The State heavily relied on this document to argue that Roy had abandoned his job. Thus the State asserted it was Roy's actions and not his inability to earn money that led to his failure to provide court ordered support. State's counsel made four separate references to Roy abandoning his job in her closing argument and her closing-rebuttal specifically repeating that there is a letter from Roy's employer proving this.

{¶ 23} The State argues that the letter was only used to impeach Roy's testimony and was not a violation of the rules of evidence.

{¶ 24} Pointing to *State v. Hemsley*, 6th Dist. No. WM-02-010, 2003-Ohio-5192, the State argues that in overruling an ineffective assistance of counsel assignment of error the 6th District noted that an unauthenticated document that constituted hearsay was not admitted into evidence and used to test credibility during cross-examination. *Id.* at ¶ 22. "[A] cross-examiner may ask a question if the examiner has a good-faith belief that a factual predicate for the question exists." *State v. Gillard*, 40 Ohio St.3d 226, 231 (1988). However, the 6th District continued and stated that the error of presenting an unauthenticated document to a defendant on the stand, thus allowing the jury to see that it exists, was harmless in that case because the defendant eventually admitted to what the document was saying. *Id.* at ¶ 23. This is in contrast to the case at bar as Roy continually denied that he abandoned his job.

{¶ 25} However, Roy fails the second prong of the *Strickland* test, if the unauthenticated document had not been used there is not a reasonable probability that the outcome of the trial would have been different. The evidence presented by the prosecution was clear and the case came down to proof of the affirmative defense. We already stated that the jury could have simply not found Roy's testimony credible and not relied on the unauthenticated letter.

{¶ 26} We acknowledge the prominence of the argument by the State that Roy abandoned his job. This issue was used in the State's cross-examination and especially in the State's closing, referring to the "record" that Roy abandoned his job four separate times at length. However, Roy's counsel also addressed the letter in closing:

> I know Mr. Roy read that into the record. This is what I would tell you, is that that document wasn't produced by Mr. Roy, it wasn't signed by Mr. Roy. It is a --- it was a termination, but Mr. Roy had no control over what was written in that document as to when he walked out. He said that wasn't his recollection. That is what was written on the paper, but we don't have anybody from [the country club] saying that that is what happened. We have Mr. Roy saying that is not accurate, that wasn't my recollection of what happened.

(Tr. 113-114.)

{¶ 27} The state again asserted that Roy abandoned his job in its closing rebuttal.

{¶ 28} The jury asked the court during deliberation, for the letter that said Roy abandoned his job, "Can we have a copy of the subpoena that included a copy of the defendant's termination form?"(Tr. 132.) The trial court responded, "You have received all of the exhibits admitted into evidence in this case." Thus, the jury was aware the letter was not part of the admitted exhibits for its consideration.

{¶ 29} As noted earlier, the State had Roy read portions of the document into the record and then argued the credibility of Roy's testimony. The State also argued that, even if Roy's testimony were completely true, the resulting lapse in employment did not excuse so many months with so little or nothing being paid.

{¶ 30} Defense counsel could well have decided as a matter of trial tactics that objecting to the reference to the document would only emphasize the importance of the document and leave the jury wondering what the defendant and his counsel were trying to hide in the way of information from the termination records of his employment with the country club. Counsel chose to avoid this problem by allowing the allegation in the records to be heard by the jury and eliciting his client's denial of the allegations in the document. This was a legitimate approach to the problem and a judgment call by counsel, which does not automatically constitute ineffective assistance of trial counsel.

{¶ 31} Because we have found that the appellant has failed the second prong of the *Strickland* test and there is no reasonable probability the outcome of the trial would have been different given the minimal payments Roy made, appellant's fourth assignment of error is without merit.

{¶ 32} The fourth assignment of error is overruled.

{¶ 33} Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J. and CONNOR, J., concur.

————————————