[Cite as *State v. Panich*, 2025-Ohio-5709.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

       Plaintiff-Appellee,

- vs -

NICHOLAS HAROLD PANICH,

       Defendant-Appellant.

CASE NO. 2025-A-0028

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2024 CR 00530

## OPINION AND JUDGMENT ENTRY

Decided: December 22, 2025
Judgment: Affirmed

*April R. Grabman*, Ashtabula County Prosecutor, and *Dane R. Hixon*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Eric M. Levy*, The Law Office of Schlachet and Levy, Terminal Tower, Suite 2200, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Appellant, Nicholas Harold Panich ("Panich"), appeals from the judgment of the Ashtabula County Court of Common Pleas, convicting him of Aggravated Assault, and sentencing him to two years of community control. For the following reasons, we affirm.

{¶2} Panich pleaded guilty to and was convicted of Aggravated Assault, a fourth degree felony in the Ashtabula County Court of Common Pleas. The trial court sentenced Panich to two years of community control, with the added conditions that he not have any alcoholic beverage, drug of abuse, pseudoephedrine product, marijuana, anything that

contains THC; that he may not enter any business or bar that sells alcohol for consumption; use a vaping device; and that he must submit to unannounced urinalysis; and submit to mental health and substance abuse screening. Panich appeals his sentence asserting that there is no nexus between the conditions and the convicted offense. Panich further avers that his counsel was ineffective, and that the trial court erred in accepting his guilty plea when it failed to inform him that by pleading guilty, he was waiving the right to compulsory process.

{¶3}    After a review of the record and pertinent law, we conclude that the trial court adequately complied with Crim.R. 11(C)(2) and that Panich was informed that he was waiving his right of compulsory process. Our review of Panich's community control conditions are limited to plain error as he did not object in the court below. The imposition of the conditions of Panich's community control do not rise to the level of plain error, and accordingly, Panich's counsel was not ineffective as Panich has not demonstrated prejudice or a reasonable probability that the outcome would have been different had trial counsel objected to his community control conditions.

{¶4}    Accordingly, we affirm the judgment of the court below.

### Substantive and Procedural Facts

{¶5}    Panich's charges were the result of events that occurred on October 19, 2024, where Panich entered the home of an individual and her son, without invitation, with a firearm in his possession. An initial indictment charged Panich with the following offenses: Aggravated Burglary, a violation of R.C. 2911.21(A)(1), a felony of the first degree with a firearm specification ("Count One"); and three counts of Felonious Assault,

Case No. 2025-A-0028

violations of R.C. 2903.11(A)(2) and (D)(1)(a), felonies of the second degree, with firearm specifications ("Counts Two, Three, and Four").

{¶6} On February 24, 2025, a hearing was held where the State made an initial plea offer. Panich rejected that offer.

{¶7} On April 22, 2025, a bond revocation hearing was held. At the hearing, Panich's bond was revoked for testing positive for alcohol and marijuana, both of which were prohibited by the conditions of his bond.

{¶8} On April 25, 2025, a plea hearing and hearing on a request to reinstate Panich's bond were held. The trial court addressed Panich, asking him to read portions of the plea agreement on the record. The trial court asked Panich directly, as he read the agreement aloud, if he understood the charges against him and what rights he was waiving. Panich indicated to the trial court that he understood and agreed. The trial court accepted Panich's guilty plea to an Amended Count Two of the indictment for Aggravated Assault, in violation of R.C. 2903.12(A)(1)(B), a felony of the fourth degree. Pursuant to a negotiated plea agreement, the remaining charges were dismissed. A presentence investigation report was ordered. Sentencing was set for a later date. Panich's request for reinstatement of his bond was denied.

{¶9} The sentencing hearing was held on May 27, 2025. Panich was sentenced to two years of community control. The trial court stated that during Panich's community control, he would be subject to the following conditions: "[Panich is] not permitted to have any alcoholic beverage, drug of abuse, pseudoephedrine product, marijuana, or anything that contains THC. You cannot go into any bar or business that sells alcohol for

Case No. 2025-A-0028

consumption on the premises." Panich made no objection to the conditions of his community control sentence.

## Assignments of Error

{¶10} "[1.] The trial court abused its discretion when it imposed unreasonable conditions on appellant's community control which had no nexus to the offense for which he was convicted and were not related to rehabilitation, administering justice, or ensuring good behavior when it imposed conditions related to substance screening, mental health, and precluding appellant from beaing [sic] near any location bar or business that sells alcohol for consumption on the premises and imposing said sanctions were otherwise plain error."

{¶11} "[2.] Appellant received ineffective assistance of trial counsel where counsel failed to object to the imposition of conditions of community control which were unrelated to the offense for which he was convicted."

{¶12} "[3.] The trial court erred in accepting appellant's guilty plea which did not comply with Criminal Rule 11 and was not knowingly, intelligently and voluntarily made where appellant was not properly advised of his right to compulsory process prior to entering his guilty plea."

## Community Control Conditions

{¶13} Panich's first assignment of error asserts that the trial court improperly imposed unreasonable conditions of community control bearing no nexus to the offense for which he was convicted. Specifically, Panich argues that the conditions prohibiting him from "frequenting an establishment that served alcohol, partake in mental health

assessment and treatment, submit to random drug screens, and . . . not use a vaping device" were overly broad.

{¶14} The sentencing transcript indicates that Panich was sentenced to two years of community control, with the conditions that Panich is "not permitted to have any alcoholic beverage, drug of abuse, pseudoephedrine product, marijuana, or anything that contains THC. [Panich] cannot go into any bar or business that sells alcohol for consumption on the premises. [Panich] cannot use any vaping device or product." The judgment entry on sentence indicates that:

> [T]he Defendant is sentenced to **two (2)** years of Community Control. With the following additional conditions:
>
> A: Defendant shall obey the laws of the State of Ohio and the United States.
>
> B: Defendant shall not leave the State of Ohio without the permission of the Court or supervising officer.
>
> C: Unannounced urinalysis.
>
> D: Defendant shall undergo a Mental Health and Substance Abuse assessment and follow all recommendations.

{¶15} Generally, community control sanctions are reviewed under an abuse of discretion standard. *Conneaut v. Pushic*, 2025-Ohio-1783, ¶ 24 (11th Dist.), citing *State v. Bourne*, 2023-Ohio-2832, ¶ 18 (11th Dist.), citing *State v. Talty*, 2004-Ohio-4888, ¶ 10. However, Panich did not object to the conditions imposed at sentencing, therefore waiving all but plain error. *Id.* at ¶ 25, citing Crim.R. 52(B). *See Conneaut v. Wick*, 2024-Ohio-4452, ¶ 8 (11th Dist.).

{¶16} This court recently noted the discretionary aspect of plain error review:

> "Under Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not

brought to the attention of the court.'" *State v. Barnes*, 2002-Ohio-68, ¶ 20. "To find plain error, we must conclude (1) there was an error, i.e., a deviation from a legal rule, (2) the error was plain, i.e., an obvious defect in the proceedings, and (3) the error affected substantial rights, i.e., the outcome of the proceedings." *State v. Warfield*, 2022-Ohio-1818, ¶ 55 (11th Dist.), citing *Barnes* at ¶ 20. "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand than an appellate court correct it." *Id.* at ¶ 21. [Crim.R. 52(B)] states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them. . . . [Courts are admonished] to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, quoting, *State v. Long*, 53 Ohio St.2d 91, paragraph three of the syllabus (1978).

*Pushic* at ¶ 25. Therefore, we limit our review to notice plain error only where a manifest miscarriage of justice would occur.

{¶17} "A trial court's discretion in imposing community control sanctions is not limitless." *Bourne* at ¶ 19, citing *Talty* at ¶ 11. A community control sanction is generally not found to be an abuse of discretion if the condition is reasonably related to the "probationary goals of doing justice, rehabilitating the offender, and insuring good behavior." *Id.*, citing *Talty* at ¶ 12. "Such conditions cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." *State v. Jones*, 49 Ohio St.3d 51, 52 (1990). To determine whether the condition is related to those probationary goals, courts must consider whether the condition: "(1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Id.* at 53.

{¶18} Here, Panich's two-year community control sentence included the condition that Panich abstain from "any alcoholic beverage, drug of abuse, pseudoephedrine

product, marijuana, or anything that contains THC." Panich's community control sentence further prohibited him from entering any bar or business that sells alcohol for consumption on the premises or from using any vaping device or product. The sentencing entry indicates that Panich must additionally undergo unannounced urinalysis, and a Mental Health and Substance Abuse assessment and follow those recommendations.

{¶19} There is nothing in the record indicating that Panich's conviction for Aggravated Assault involved alcohol or drugs. The only reference in the record to alcohol was at the April 22, 2025 hearing where the trial court revoked Panich's bond for testing positive for alcohol and marijuana. However, Ohio courts have previously declined to find plain error where there was a lack of evidence drawing a nexus between similar conditions and the convicted offense. *State v. Bright*, 2025-Ohio-725, ¶ 18 (5th Dist.) (no plain error found where the trial court's decision to include a no-alcohol and no-entry-into-bars community control condition in assault case). Accordingly, the restrictions placed upon Panich in this case do not rise to the level of creating a manifest injustice, and we decline to find plain error here. Panich's first assignment of error is without merit.

**Ineffective Assistance of Counsel**

{¶20} In Panich's second assignment of error, he asserts that his counsel was ineffective for failing to object to the imposition of conditions of community control as they were not related to his offense.

{¶21} To demonstrate ineffective assistance of counsel, Panich must show: "'(1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different.'" *State v. Neubig*, 2021-Ohio-4375, ¶ 25 (11th Dist.), citing *Strickland*

*v. Washington*, 466 U.S. 668, 689. "A failure to 'satisfy one prong of the *Strickland* test negates the need to consider the other.'" *Id.*, quoting *State v. Madrigal*, 2000-Ohio-448, ¶ 49, citing *Strickland* at 697.

{¶22} Here, Panich was directly addressed by the trial court:

THE COURT: Mr. Panich, is there anything you would like to say?

[PANICH]: No, Your Honor.

THE COURT: Okay. So, if we let you out of jail, is there going to be any foul-up?

[PANICH]: No, Your Honor.

THE COURT: You know you're not allowed to drink?

[PANICH]: Yes, You're Honor.

THE COURT: Not allowed to use drugs?

[PANICH]: That's right, Your Honor.

THE COURT: Not allowed to go to bars. You understand that?

[PANICH]: I do understand that, Your Honor.

. . .

THE COURT: You are not permitted to have any alcoholic beverage, drug of abuse, pseudoephedrine product, marijuana, or anything that contains THC. You cannot go into any bar or business that sells alcohol for consumption on the premises. You cannot use any vaping device or product.

{¶23} Defense counsel did not object to Panich's community control; however, Panich was directly addressed by the trial court and made no objection to the conditions himself. To demonstrate ineffective assistance of counsel, Panich must overcome both prongs of the *Strickland* test. *Strickland* at 697. Prejudice must be shown by a reasonable

probability that but for defense counsel's errors, the outcome of the proceedings for Panich would have been different. Panich signed what appears to have been a standard form that was filed on May 30, 2025, containing the conditions of community control that Panich now believes are too restrictive. There is no indication that had defense counsel objected, they would not have been included, or furthermore that the result of the proceedings would have been different. "[F]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Hoffner*, 2004-Ohio-3430, ¶ 56, quoting *State v. Holloway*, 38 Ohio St.3d 239, 244. "'""[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel."'"" *State v. Khalif*, 2024-Ohio-2239, ¶ 76 (10th Dist.), quoting *State v. Young*, 2020-Ohio-462, ¶ 103 (10th Dist.), quoting *State v. Roy*, 2014-Ohio-4587, ¶ 20 (10th Dist.), quoting *State v. Carson*, 2006-Ohio-2440, ¶ 51 (10th Dist.). Panich merely asserts that his review on appeal was limited by defense counsel's failure to object, which does not in and of itself point to prejudice. *See State v. Neubig*, 2021-Ohio-4375, ¶ 28 (11th Dist.) (appellant's assertion that trial counsel's failure to object limited his review was not enough to establish prejudice).

{¶24} Accordingly, Panich's second assignment of error is without merit.

## Crim.R. 11 Compliance

{¶25} In Panich's third assignment of error he contends that the trial court erred in accepting his guilty plea because it failed to comply with Crim.R. 11. Specifically, Panich asserts the trial court did not "properly advise [him] of his right to compulsory process prior to entering his guilty plea."

{¶26} "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29; *State v. Clark*, 2008-Ohio-3748, ¶ 25. "'To assure that a plea is made in a knowing, voluntary and intelligent manner, the trial court must follow the mandates of Crim.R. 11(C), which identifies both constitutional and non-constitutional requirements for accepting a plea of guilty or no contest.'" *State v. Kittelson*, 2016-Ohio-8430, ¶ 14 (11th Dist.), quoting *State v. Knox*, 2015-Ohio-4198, ¶ 9 (2d Dist.).

> The court has the duty of "[i]nforming the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."

*Id.* at ¶ 15, quoting Crim.R. 11(C)(2)(c). Though preferred, it is not required that the trial court use the exact language contained in Crim.R. 11(C) during the plea colloquy. *Id.* at ¶ 17, citing *State v. Barker*, 2011-Ohio-4130, ¶ 14.

{¶27} Here, the trial court asked Panich to read the plea agreement that he signed on the record. The following interaction between Panich and the trial court ensued:

> THE COURT: [Y]ou've had a chance to go over the Plea Agreement with your lawyer?
>
> [PANICH]: Yes, Your Honor.
>
> THE COURT: She's answered all your questions?
>
> [PANICH]: Yes, Your Honor.
>
> THE COURT: She's done everything you've asked her to do?

Case No. 2025-A-0028

[PANICH]: Yes, Your Honor.

THE COURT: Do you need more time to talk to her?

[PANICH]: No, Your Honor.

THE COURT: Okay. You've got a copy of the Plea Agreement in front of you, correct?

[PANICH]: Yes, Your Honor.

THE COURT: Okay, I would like you to read out loud the first paragraph.

[PANICH]: Okay. I, Nicholas Harold Panich, the Defendant in the above-captioned case, hereby state that my counsel has explained to me the facts and circumstances surrounding my plea and has informed me of the charges against me and the penalty provided by law for such charges. Prior to - - Oh.

THE COURT: Any questions?

[PANICH]: No, no questions.

THE COURT: Okay. Continue reading all the way through the list of rights that you have agreed to give up.

. . .

[PANICH]: Prior to signing this Written Plea of Guilty, my attorney explained to me that I have the following constitutional rights which I have waived by pleading guilty. I understand that the plea means I give up my right to a jury trial or court trial; to question or have my attorney question witnesses against me; to use the power of the Court to call witnesses; at a trial, I have the right not to take the witness stand and have no one comment if I decide not to testify; at a trial, the State would be required to prove my guilt beyond a reasonable doubt on every element of the offense; if I were convicted at trial, I would have a right to appeal.

THE COURT: Do you have any questions about any of those rights?

[PANICH]: No, Your Honor. I have no questions.

THE COURT: You understand all of them?

[PANICH]: Yes, Your Honor, I do.

THE COURT: You agree to give them up?

[PANICH]: Yes, Your Honor.

THE COURT: Okay. Please read the next paragraph.

[PANICH]: I understand these rights and privileges and the possible consequences of a guilty plea. I waive and reject all of these rights. I am voluntarily pleading guilty on my own free will. I understand that this Written Plea of Guilty constitutes an admission which may be used against me at a later trial.
By pleading guilty, I admit committing the offense and will tell the Judge the facts and circumstances of my guilt.

THE COURT: Any questions?

[PANICH]: No, Your Honor.

{¶28} "'Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to a trial by jury, is not grounds for vacating a plea as long as the trial court explained these rights in a manner reasonably intelligible to that defendant.'" *Kittleson*, 2016-Ohio-8430 at ¶ 17, quoting *State v. Ballard*, 66 Ohio St.2d 473 (1981), paragraph two of the syllabus. Further, "[a] trial court complies with Crim.R. 11(C)(2)(c) when its explanation of the constitutional right to compulsory process of witnesses is described to the defendant during the plea colloquy as the 'right to call witnesses to speak on your behalf.'" *Barker*, 2011-Ohio-4130 at paragraph one of the syllabus. "[T]he word 'call,' as commonly understood in everyday parlance, encompasse[s] the meaning 'to compel someone's appearance.'" *Kittleson* at ¶ 22, quoting *Barker* at ¶ 18.

Case No. 2025-A-0028

{¶29}   Panich read the terms of the plea agreement as the trial court directed him to. The terms Panich read aloud indicated that he was waiving the right to "use the power of the Court to call witnesses." When the trial court asked Panich if he had any questions about any of those rights, Panich replied "No, Your Honor. I have no questions." The trial court was not required to do more. Panich's third assignment of error is without merit.

## Conclusion

{¶30}   All three of Panich's assignments of error are without merit. Accordingly, we affirm. For the foregoing reasons, we affirm the decisions of the Ashtabula County Court of Common Pleas.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-A-0028

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

PRESIDING JUDGE ROBERT J. PATTON

JUDGE JOHN J. EKLUND,
concurs

JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-A-0028